**In re Donald P. COUCH, Debtor.**

**Bankruptcy No. LR 80–457M.**
**Adv. No. 83–45.**

United States Bankruptcy Court,
E.D. Arkansas, W.D.

Sept. 11, 1985.

C. Richard Crockett, Little Rock, Ark., for debtor.

Middleton P. Ray, Jr., Little Rock, Ark., Trustee.

Wm. Russell Gibson, Fayetteville, Ark., for McIlroy Bank.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

Donald P. Couch filed a voluntary petition for relief under the provisions of Chapter 11 on May 11, 1980. Among the assets listed were shares of stock in International Properties, Inc., (IPI). The debtor testified at the hearing that he owned 1,500 shares out of a total of 4,000 shares or 37.5%. The debtor was president and a member of the board of directors of the corporation. IPI also filed for relief under Chapter 11 in May of 1980.

In the Donald P. Couch case no plan of reorganization was ever proposed, and on September 3, 1981, the debtor voluntarily converted to a proceeding under Chapter 7. On September 17, 1981, the Honorable Middleton P. Ray, Jr., was appointed trustee. The first meeting of creditors of the Chapter 7 case was scheduled for October 13, 1981, and the date of January 11, 1982, was fixed as the last day for filing objections to discharge under 11 U.S.C. § 727 and for filing complaints to determine dischargeability under 11 U.S.C. § 523(c). No party in interest filed an objection to discharge or complaint to determine dischargeability within these time limits. On February 8, 1982, amended schedules and statement of affairs were filed by Mr. Couch which purported to reflect the debtor's assets and liabilities as of September 8, 1981, the date of conversion. The debtor's discharge was granted on March 18, 1982.

According to the debtor's schedules, IPI owned 100% of the outstanding stock in International Properties Development Company (IPDC). IPDC never filed bankruptcy. At the time IPI filed for relief IPDC was the owner of 60% of a commercial

building in Little Rock, Arkansas, known as Cantrell Place. Mr. Couch estimated the value of Cantrell Place to be $54,000.00. IPI's schedules reflect that the equity value of this asset was $360,000.00.

In April 1981, IPI's case was dismissed. At the time IPI's case was dismissed McIlroy Bank & Trust Company (McIlroy) held a judgment against IPI. On May 11, 1981, Mr. Couch caused IPI to transfer its interest in Cantrell Place to IPDC. Simultaneously, Mr. Couch caused IPI to transfer all the stock in IPDC to himself, while he was a debtor-in-possession in the Chapter 11 case. Mr. Couch admitted that the purpose of the transfer was to avoid the effect of McIlroy's execution. When Mr. Couch converted his Chapter 11 case to Chapter 7 and filed his amended schedules on February 8, 1982, reflecting assets and liabilities as of September 8, 1981, the stock ownership of IPDC was not reflected. The consideration for the transfer of the stock in IPDC was the execution by Mr. Couch of a promissory note payable to IPI due in two years in the principal sum of $10,000.00.[1] The note was also pledged to the debtor's attorney, Hon. Richard C. Crockett, as collateral for accrued attorney's fees.[2]

Subsequently, in May 1982, an involuntary petition under Chapter 7 was filed against IPI and the debtor was adjudged a bankrupt. The Honorable Richard L. Smith was appointed trustee. At some point in time not specified by the evidence, the trustee of IPI became aware of the transfer of the IPDC stock and negotiated the return of the stock from the debtor to IPI.

Another asset shown on the schedules was stock of Railroad Lodging, Inc. (Railroad). Railroad was wholly-owned by IPI at the time of the filing of the original bankruptcy petition by IPI. IPI's schedules estimated the value of the stock at $42,500.00. Donald Couch was president of

---

**1.** The note is invalid because the debtor-in-possession lacked authority to execute such a note outside the ordinary course of his business without court approval. 11 U.S.C. § 1107; 11 U.S.C. § 364(b).

**2.** The pledge is also invalid since it was made without Court authority after notice and a hearing. 11 U.S.C. § 330; 11 U.S.C. § 331.

Railroad and a member of the board of directors, although he did not own any of the stock personally. Railroad owned some interest in a motel in White Fish, Montana, which had been sold prior to the time IPI filed bankruptcy.

In May 1982, Mr. Couch caused IPI to transfer the stock in Railroad to IPDC. There was no consideration for the transfer. Mr. Couch testified that he did not recall the reason he transferred the stock in Railroad to IPDC. There was no proof at the trial that this stock had any value.

McIlroy filed a complaint to revoke the debtor's discharge pursuant to 11 U.S.C. § 727(d)(2) and as grounds alleged that the debtor failed to report to the trustee the acquisition of the stock in IPDC during the course of his aborted Chapter 11 case. McIlroy also alleged one other ground which was abandoned on the day of trial.

■ 11 U.S.C. § 727(d)(2) provides as follows:

(d) On request of the trustee or a creditor, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of, or entitlement to, such property, or to deliver or surrender such property to the trustee;

The trustee has the burden of establishing both the acquisition of property which becomes property of the estate and the knowing and fraudulent failure to either report the acquisition or deliver the property to the trustee. *In re Black*, 19 B.R. 468 (Bkrtcy.M.D.Tenn.1982); *In re Guerrero*, 30 B.R. 463 (D.C.N.D.Ind., Hammond Div. 1983); 4 *Collier on Bankruptcy* ¶ 727.-15[4] (15th ed. 1985).

In addition to these statutory requirements, it has been generally held that if the party seeking revocation under this section had knowledge of the facts in time to file an objection to discharge it will be estopped under the principles of laches from seeking revocation of a discharge. *In re Lyons*, 23 B.R. 123 (Bkrtcy.E.D.Va.1982); *In re Guerrero*, 30 B.R. at 463; *In re Garfinkle*, 2 B.R. 65 (Bkrtcy.S.D.N.Y.1979); 4 *Collier on Bankruptcy* ¶ 727.15[4] (15th ed. 1985).

■ Here the evidence establishes all of the elements necessary to revoke a discharge. The debtor admitted that he never told his trustee about acquiring the stock in IPDC. Mr. Couch contends that this stock was not property of the estate and, therefore, he was not required to report it to the trustee. He argues that the stock was not property of the estate because the consideration was intended to be paid by Mr. Couch from earnings from personal services to be performed in the future. However, the testimony was that the note was not payable unless IPDC was able to sell its interest in Cantrell Place and realize on the equity then thought to exist. At the time of the transfer, Donald E. Couch was a debtor-in-possession under a pending Chapter 11 case and would have necessarily received title to the stock as debtor-in-possession on behalf of the estate. The stock therefore became property of the estate. 11 U.S.C. § 541(a)(7); *Matter of Wilson*, 694 F.2d 236 (11th Cir.1982); 4 *Collier on Bankruptcy* ¶ 541.95 (15th ed. 1984). The effect of the transfer was to increase Mr. Couch's equity in Cantrell Place.

■ The trustee must also establish that the debtor's actions were done knowingly and fraudulently. *In re Black*, 19 B.R. at 468. The debtor submitted his amended schedules under oath on February 8, 1982, and itemized under Exhibit D to Schedule B–2 his stock ownership as of September 8, 1981. The ownership of the stock in IPDC was not reflected on the schedule. The debtor did not testify at the hearing that this omission was inadvertent. He asserts lamely that his amended schedules didn't purport to reflect his assets as of September 8, 1981. However, the schedules unambiguously contradict the debtor's testimony in this regard. The debtor also admitted that the transfer was accomplished to avoid McIlroy's execution against IPI. This evi-

dence is sufficient to establish fraudulent intent.

█ Finally, the Court must consider whether McIlroy is guilty of laches. Typically, the first meeting of creditors occurs only after all schedules have been filed but here, because of unexplained confusion, the first meeting of creditors occurred on October 13, 1981. The Order scheduling the first meeting of creditors set January 11, 1982, as the last date to file objections to discharge. The amended schedules containing an omission which could have formed the basis of an objection to discharge under 11 U.S.C. § 727(a)(4)(A) were not filed until February 8, 1982. The action to revoke the debtor's discharge was commenced January 24, 1983. There was no evidence to indicate that McIlroy had knowledge prior to January 11, 1982, that Mr. Couch intended to conceal his stock ownership in IPDC from his trustee. After that date it was too late to file an objection to his discharge. Under all of the circumstances in this case, the plaintiff is not guilty of laches.

A separate judgment revoking the debtor's discharge will be entered in accordance with this memorandum opinion.

IT IS SO ORDERED.