**In re James R. BENNETT and wife, Sandra Annette Bennett, Debtors.**

**Floyd HOLDER, Trustee, Plaintiff,**

**v.**

**James Ralph BENNETT and wife, Sandra Annette Bennett, Defendants.**

**Bankruptcy No. 585–50129–7.
Adv. No. 590–5058.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

May 22, 1991.

On request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

. . . . .

the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee ...

Finding that the Debtors knowingly and fraudulently failed to report acquisition of property of the estate to the Trustee and knowingly and fraudulently failed to deliver such property to the Trustee, the court will revoke the discharge and grant a judgment in favor of the Trustee.

## FACTS

On April 29, 1985 the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. They listed their employment as farming and insurance. They scheduled secured debts totaling $731,591.00 and unsecured debts of $85,016.42.

Schedule B–1 of the Debtors' statements and schedules required them to give the "Description and location of all real property in which debtor has an interest. Include ... leaseholds...." The only property they scheduled was their home at 401 W. Hill Street in Spur, Texas. The list of secured creditors on Schedule A–2 noted that Federal Land Bank held a first lien on 1,395 acres of farmland in Dickens County, Texas, and that the Small Business Administration held a second lien on 930 acres of farmland in Dickens County, Texas. This land was not disclosed or otherwise described in the list of assets. Item (t) of Schedule B–2 instructed the Debtors to list all "[s]tock and interests in incorporated and unincorporated companies. Itemize

Thomas P. Stamps, Atlanta, Ga., Craig Brummett, Brummett, Brummett & Brummett, Lubbock, Tex., for debtors.

Richard Ladd, Law Offices of Floyd D. Holder, Lubbock, Tex., for trustee.

## MEMORANDUM OF OPINION ON REVOCATION OF DISCHARGE

JOHN C. AKARD, Bankruptcy Judge.

Floyd Holder, the Trustee-in-Bankruptcy (Trustee) in the James R. Bennett and wife, Sandra Annette Bennett (Debtors) case seeks both a judgment against them and to revoke their discharge under § 727(d)(2) of the Bankruptcy Code [1] which reads as follows:

---

**1.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

separately." They responded "none". Question (o) of the same schedule required the Debtors to list "[g]overnment and corporate bonds and other negotiable and non-negotiable instruments". They responded "none". The Debtors' schedules did not list ownership of any livestock nor any monies due the Debtors. Both Debtors signed the Statement of Affairs and Schedules under penalty of perjury, reciting that they had examined those documents and that they were "true and correct to the best of my knowledge, information and belief". The Debtors received a discharge on August 23, 1985.

On November 21, 1988 (three and one-half years after they filed their Petition) the Debtors filed an amendment to their schedules in which they acknowledged that prior to the bankruptcy they had the following property which was not reflected in their prior schedules:

A. 8,000 leased acres in Dickens County.

B. Six tracts of land in which they held an interest.

C. An undivided one-half interest in 157 acres of land.

D. Cattle and horses. (No numbers given.)

E. Four series B subordinated building bonds of American Cotton Growers with a $2,000.00 market value as of the date of filing.

F. "Approximately 36,920.736 shares of Equity Patronage at 30¢ Per share" of American Cotton Growers valued at $11,076.22 as of the date of filing.

G. Shares of stock and patronage refunds from the Federal Land Bank pledged to that bank.

On November 21, 1988 the Debtors amended their exemptions to claim the American Cotton Growers (ACG) bonds at a value of $1.00 and their "Equity/Patronage/Non–Patronage Distribution Shares" in ACG at a value of $8,297.00 as exempt. These values were the Debtors' statements as to the value of these items on the date the bankruptcy was filed.

Concurrently with their amendment to the schedules, the Debtors, through their attorney, submitted $6,250.00 to the Trustee asserting that amount represented the non-exempt portion of the assets they now claimed as exempt. Despite requests from the Trustee, the Debtors refused to divulge the total amount of money they received from these sources. Trustee's Exhibit 26 revealed that at the time of the November 21, 1988 amendment, the Debtors had already received more than $92,500.00 in distributions from ACG alone.[2] From 1979 through 1983 the Debtors sold cotton through ACG and accumulated $39,277.38 in capital credits. The credits were not reflected on the original schedules. The 1988 amendments did not show that the Debtors received two payments of $635.75 each on the bonds (which they valued at $1.00 on the exemption list). In August, 1987 ACG sold its denim mill to Plains Cotton Cooperative Association and ceased operations. This is referred to as ACG–Denim Mill on Exhibit 26.

Altogether, Post-petition the Debtors received $112,404.25 from various cooperatives.[3] Since the Debtors did not farm after they filed their bankruptcy, all payments received from cooperatives related to pre-petition activities.

**2.** ACG was a cooperative engaged in selling and milling cotton in its denim mill. The farmers who marketed cotton through ACG were considered to be its owners. Each farmer received capital credits (sometimes known as patronage credits or patronage dividends) on the books of ACG in an amount determined each year by the Board of Directors of ACG. Payments were allocated on the basis of the number of 500 lb. bales the farmer sold through ACG that particular year. Each year the Board of Directors determined the amount of capital to retain for business operations and that amount was allocated among the members based on the average number of bales the member had sold through ACG. The result was that normally the capital credits remained on the books for eight years. The by-laws of ACG provided that after the credits had existed for more than eight years, they could be paid to the member if ACG had sufficient funds.

**3.** See Trustee's Exhibit 26 attached.

## DISCUSSION [4]

In order to revoke the Debtors' discharge, the Trustee must establish that the Debtors acquired or became entitled to acquire property of the estate *and* knowingly and fraudulently failed to report or deliver the property to the Trustee. § 727(d)(2). Both elements of this test must be satisfied. *Stewart v. Black (In re Black)*, 19 B.R. 468, 470 (Bankr.M.D.Tenn. 1982). The Debtors' actions must have been taken with knowing intent to defraud the Trustee. *Id.* In addition to the statutory requirements, it has been held that if the party seeking revocation under this section had knowledge of the facts in time to file an objection to the discharge, the party will be estopped from seeking revocation of the discharge. *In re Couch*, 54 B.R. 682 (Bankr.E.D.Ark.1985). Although the Trustee in this case was aware that the Debtors had failed to schedule their horses prior to the expiration of the bar date for filing objections to the discharge, the Trustee was neither aware of the Debtors' other omissions nor of the funds received by the Debtors as shown on Trustee's Exhibit 26 until after the bar date had passed. Most of the money detailed in the Trustee's complaint was received by the Debtors after they were discharged. The court must strictly construe the statute and revoke discharges only for reasons clearly expressed in the statute. *Canfield v. Lyons (In re Lyons)*, 23 B.R. 123, 125 (Bankr.E.D. Va.1982).

All payments described on Trustee's Exhibit 26 arise out of the Debtors' prepetition farming operations and, thus, are property of the bankruptcy estate. § 541(a). The Bankruptcy Code requires all debtors to surrender all property of the estate and all records concerning property of the estate to the Trustee. § 521(4). The failure of these Debtors to fulfill this responsibility is the basis of the Trustee's action for judgment and revocation of their discharge. § 727(d)(2).

The Debtors offered several arguments in opposition to the Trustee's position which are discussed below under separate headings.

### Mrs. Bennett's Bankruptcy Estate is Separate From That of Her Husband

The Debtors asserted that the property interest "related to American Cotton Growers, was the sole property of James Ralph Bennett and his Estate and not property of the Estate of Sandra Annette Bennett". They acknowledged that the Bennetts filed a joint petition, but asserted that there was no substantive consolidation of the two estates. In addition, they argued that the checks in question were made payable to Mr. Bennett.[5]

The Debtors' argument is without merit. First, it ignores Texas community property law which provides that, with limited exceptions, all property acquired by either spouse during the marriage is deemed community property and is owned one-half by each spouse. (Tex.Fam.Code Ann. § 5.01 (Vernon 1990)). The fact that the checks were made payable to Mr. Bennett did not destroy their community property character. In Texas, even if the ACG interest were Mr. Bennett's separate property the profits received constituted community property. *See, e.g., Gifford v. Gabbard*, 305 S.W.2d 668 (Tex.Civ.App.—El Paso 1957, no writ). Thus, the funds in question were property of her estate as well as property of Mr. Bennett's estate and she had an equal obligation to report them and turn them over to the Trustee.

Additionally, when Mr. Bennett received the funds, he placed them in a joint bank account upon which either he or Mrs. Bennett could draw. He did not testify that the account contained only separate funds.

---

4. Additional findings of fact are contained in the Discussion as necessary for a complete understanding.

5. In 1985 common practice was to jointly administer cases filed by husband and wife in a joint petition without the necessity of a court order. This practice was recognized in the Local Bankruptcy Rules adopted August 1, 1988 in Local Rule 1015(c) which provides that the filing of a joint petition shall be deemed an order directing joint administration unless the court orders otherwise.

Under Texas law, where husband and wife permit his or her separate property to become so commingled with community property that it cannot be identified, that separate property becomes community property and this is particularly true of bank accounts. *Duncan v. United States,* 247 F.2d 845 (5th Cir.1958). As a matter of custom, Mr. Bennett used that particular account and Mrs. Bennett used another joint account. However, this custom does not override the fact that she had full access to the funds. Further, testimony indicated that the funds were used for the Debtors' living expenses. Thus, Mrs. Bennett directly benefitted from their use. Finally, Mrs. Bennett asserted an interest in the funds when she joined her spouse in claiming them as exempt, using her federal exemptions in addition to those claimed by Mr. Bennett. For these reasons the Debtors' first defense will not stand.

### Exemptions

■ The Debtors pointed out that they filed their amended exemptions on November 21, 1988 and that no one objected to them. They argued that the exemptions thus became final and that the Trustee's complaint was merely an attempt to collaterally attack their allowed exemptions. They argued that the exemptions should be valued as of the date they filed the petition and that the values they placed in the amended exemptions truly reflected the values as of the date they filed their petition. The Debtors originally claimed the Texas exemptions (which would not allow an exemption for stock or interests in cooperatives). They amended their exemptions to change to the federal exemptions in order to take advantage of the monetary provisions of the federal exemptions and claim the stock in the cooperative as exempt. The Trustee did not object to the right of the Debtors to amend their exemptions and to change from the state to federal exemptions as long as the case is pending.

The Debtors asserted that values which they placed on the ACG stock represented its value on the date they filed their petition. They did not claim as exempt the cotton payments and the payments from Farmers Co–Op Compress. They did claim exemption for the ACG bonds based on their $1 valuation. At hearing the Trustee acknowledged that participation credits are often valued at 10 to 25% of their face value because they are not paid until several years after they are earned and that payment is dependent upon the financial success of the gin or marketing company which promised to pay.

However, in this case, the Debtors neither listed nor claimed the ACG capital credits as exempt at the time the petition was filed. Only after receiving substantial monies from these credits did the Debtors seek to claim them as exempt. Without disclosing to the Trustee what they had received, they sought to exempt these distributions by valuing them at $8,297.00. The Debtors had an obligation to turn over to the Trustee the distributions from ACG as they were received, but they did not do so. Only after receiving substantial funds did they seek to exempt them—for a pittance—while concealing the true facts from the Trustee. In effect, the Debtors ask this court to sanction their profiting from their own misdeeds. This court will not do so. The issue in this case is not whether the Debtors are entitled to an exemption, but whether they fulfilled their duty to surrender property of the estate to the Trustee for the benefit of their creditors. Clearly, they did not fulfill their obligation.

■ Mr. Bennett seeks to avoid the consequences of his acts by stating that he told his original attorney about the book credits and that the attorney did not schedule them in the petition. Even if the court accepts that statement as true, the other deficiencies in the petition lead the court to the conclusion that the Debtors intentionally sought to conceal their assets from the Trustee and from their creditors. Even if their attorney failed to schedule that asset, the Debtors were obligated to add it to their schedules. They signed, under penalty of perjury, a statement that they had read the statements and schedules, and that they were true and correct. The Debtors must accept responsibility for any defi-

ciencies in their schedules. *Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier)*, 71 B.R. 212 (Bankr. 9th Cir.1987). Candor, accuracy and integrity are required of a debtor in bankruptcy. *Govaert v. Topper (In re Topper)*, 85 B.R. 167, 170 (Bankr.S.D.Fla.1988).

Mr. Bennett testified that his first attorney told him he should turn over to the Trustee only payments received before the discharge. The court does not find this statement credible because Mr. Bennett testified that he knew what assets were assets of the estate and that he knew that they should be turned over to the Trustee. Additionally, the evidence showed that on June 8, 1985 he received a cotton payment from ACG in the amount of $72.91 which he did not turn over to the Trustee even though he did not receive a discharge until August 23, 1985. If a debtor has a legally recognizable interest pre-petition to payments subsequently received post-petition, the payments are property of the estate. The test is whether the after-acquired property is sufficiently rooted in the pre-bankruptcy past. *See, e.g., Calder v. Segal (In re Calder)*, 94 B.R. 200 (Bankr.D.Utah 1988) (holding that income paid post-petition from pre-petition executory contracts was included in a debtor's estate), *aff'd per curiam Calder v. Rupp*, 912 F.2d 454 (10th Cir.1990).

■ Exempt property is not a separate classification of property. It is property of the estate which the debtor is permitted to exempt from administration by the trustee. § 522(b). The Debtors were obligated to report and turn over to the Trustee all property of the estate as it was received. After making that report, they were entitled to claim some of it as exempt. They did not do so. They concealed the property of the estate from the Trustee and reported only the portion they wanted to claim as exempt. The court finds that this action was knowingly and intentionally taken in an attempt to defraud the bankruptcy estate and its creditors.

### Accord and Satisfaction

■ The Debtors asserted that when they filed their amended exemptions they submitted a check for $6,250.00 to the Trustee in full and complete satisfaction of the Trustee's claims against the Debtors' property. The Trustee testified that he deposited that check into his account. However, the court heard no evidence to support the Debtors' claim that the amount tendered was conditioned upon the Trustee accepting it in full satisfaction of any claim. Additionally, Rule of Bankruptcy Procedure 2002 requires notice to creditors and an opportunity to object to any settlements entered into by the Trustee. The file reflects no motions to compromise and settle this matter for that sum. Consequently, even if the check had been tendered in full satisfaction, the agreement would not be binding on the Trustee because it was never approved by the court.

### Laches

■ The Debtors argued that although the amended exemptions were filed in November, 1988 this Adversary Proceeding was not filed until October 9, 1990; thus, the Trustee's action should be barred by the doctrine of laches. The testimony reflected the Trustee's efforts to secure information from the Debtors concerning the claimed exemptions, their failure to provide that information, and the investigative efforts of the Trustee to discover the payments made to the Debtors by ACG and Farmers Co-op Compress. In view of the Debtors' refusal to provide information and the extent to which the Trustee had to go to gain that information, the court does not find the delay unreasonable. Further, a complaint to revoke the discharge may be brought at any time before the case is closed. § 727(e)(2)(B). This case has not been closed.

### Limitations

■ The Debtors argued that the Trustee attempts to set aside a post-petition transfer pursuant to § 549(d) and that such action may not be commenced more than two years after the date of the transfer sought to be avoided. Section 549(d) refers to transfers of estate property to

third parties. In this instance the Debtors collected estate assets and did not report them to the Trustee. Since this complaint does not deal with transfers to third parties, § 549(d) is inapplicable. In the alternative, even were § 549(d) applicable, the Debtors' arguments boil down to a statement that if they breached their obligation to turn over property to the Trustee and concealed that fact from the Trustee long enough, they would win. Equity does not permit these Debtors to profit from their own misdeeds.

### They Told the Trustee

The Debtors asserted that, had they not amended their exemptions to claim the ACG credits, the Trustee would never have known about it. In effect, they argue that since they told a half-truth they should be awarded the whole pot. The court finds that under the circumstances of this case the half-truth was tantamount to no truth at all and that the Debtors' argument is without merit.

The Trustee requested an award of attorney's fees but cited no statutory or case authority for the award. Therefore, the request will be denied.

### CONCLUSION

■ The evidence is clear that the Debtors acquired property of the estate and knowingly and fraudulently failed to report the acquisition of that property to the Trustee and knowingly and fraudulently failed to deliver such property to the Trustee. Therefore, the Trustee has carried his burden of showing fraud in fact and the Debtors' discharge must be revoked under § 727(d)(2).

The revocation of the Debtors' discharge has no effect on the administration of the Debtors' estate other than denying them the benefits of the discharge. *Black, supra,* at 471. The Debtors are still obligated to "surrender to the trustee all property of the estate." § 521(4). The Debtors have dissipated those assets, therefore, the Trustee will be granted a judgment against them for $112,404.25 in property of the estate received by them post-petition, less $8,297.00 the court allows as exempt, and less the $6,250.00 previously paid to the Trustee, for a net judgment of $97,857.25 to bear interest at the federal judgment rate.

JUDGMENT ACCORDINGLY.

### APPENDIX
### TRUSTEE'S EXHIBIT 26
### Exhibit A
### Bennett Co-op Receipts

I. American Cotton Growers
  A. Denim Mill Distribution

| | | | |
|---|---|---|---|
| 10/5/87 | ACG—Denim Mill | | $19,638.69 |
| 1/12/88 | ACG—Denim Mill | | $19,638.69 |
| 1/12/88 | ACG—Denim Mill | | $53,240.05 |
| 1/24/89 | ACG—Denim Mill | | $ 6,677.16 |
| 8/22/89 | ACG—Denim Mill | | $ 2,761.20 |
| | | Total: | $101,740.20 |

  B. Miscellaneous

| | |
|---|---|
| 7/8/85 | $72.91 |
| 10/8/85 | $73.71 |
| 12/7/85 | $635.75 |
| 1/3/86 | $67.56 |
| 4/1/86 | $51.73 |
| 7/2/86 | $52.31 |
| 12/5/86 | $635.75 |
| 10/6/86 | $52.00 |
| 1/5/87 | $40.27 |
| 4/6/87 | $29.51 |
| Total | $1,711.40 |

C. Total ACG Distribution Paid to Debtors:         $103,451.60

II. Farmers Co-op Compress

A. Payments made to Debtors by Co-op from 12/86 to present:

| | | |
|---|---|---|
| 12/14/86 | $ 64.64 | 1980 stock year |
| 12/14/86 | $1,439.53 | 1980 stock year |
| 12/14/86 | $ 20.00 | 1981 stock year |
| 12/14/86 | $ 247.78 | 1981 stock year |
| 12/14/86 | $ 828.18 | 1982 stock year |
| 12/14/86 | $ 728.28 | 1982 stock year |
| 12/2/88 | $ 810.58 | 1983 stock year |
| 12/2/88 | $ 623.36 | 1983 stock year |
| 10/26/89 | $ 453.05 | 1984 stock year * |
| 10/26/89 | $ 399.57 | 1984 stock year * |

TOTAL:    $5,614.97

Information about payments made prior to 12/86 was unavailable from F.C.C.

* These payments were mailed to new address at 3201 West University Drive, Denton, Texas 76201.

B. F.C.C. Deposits shown to Bennetts' accounts prior to 12/86:

| | | |
|---|---|---|
| 10/20/86 | Farmers Co-op Compress | $2,415.59 |
| 10/20/86 | Farmers Co-op Compress | $ 912.81 |
| | Total | $3,328.40 |

C. Total known Farmers Cooperative Compress payments:    $8,943.37

III. Other

Deposits to Bennetts' accounts:

| | | |
|---|---|---|
| 5/13/86 | Spur Co-op | $1.00 |
| 9/8/90 | P.C.C.A. | $8.28 |
| | Total | $9.28 |

IV. Total Known Pre–Petition Co-op Interests Received by Debtors:   $112,404.25