48 F.3d 1225
NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
 UNITED STATES of America, Appellee,
v.
Janette CANTRELL, Appellant.
 No. 94-2334.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: Mar. 6, 1995.
Filed: Mar. 13, 1995.
 
 Before BOWMAN, WOLLMAN, and ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Janette Cantrell appeals her 26-month sentence imposed by the district court[1] after she pleaded guilty to income tax evasion, bankruptcy fraud, and Social Security fraud, in violation of 26 U.S.C. Sec. 7201, 18 U.S.C. Sec. 152, and 42 U.S.C. Sec. 408(a)(7)(B). We affirm.
 
 
 2
 The parties stipulated that Cantrell was employed from June 1987 through August 1990 by B-E, a Missouri corporation in St. Louis which sells and services hospital equipment. Cantrell's duties included preparing checks for payment to vendors and businesses. In April or May, 1988, using a false Social Security number, Cantrell opened a checking account at Commerce Bank under the name "Janette Cantrell d/b/a National." She began preparing checks payable to "National"-a B-E vendor-and depositing them into her own account. National also maintained a business checking account at Commerce, and Cantrell purchased an endorsement stamp similar to National's. Thus, the illegitimate checks came back to B-E showing negotiation at Commerce and bearing a stamp similar to National's. Cantrell then opened a number of other accounts using her false Social Security number, and further transferred the stolen funds. She stipulated she tried to evade her income taxes for 1989 by failing to file an income tax return and using her false Social Security number. She also intentionally used the false number in November 1990 in obtaining other employment, while at the same time receiving unemployment payments under her true Social Security number. She filed for bankruptcy in September 1991, using her false Social Security number.
 
 
 3
 The presentence report (PSR) added that the total amount of the fraudulently obtained B-E checks was $199,279; Cantrell was terminated from B-E in August 1990 when it was discovered that she had fraudulently obtained about $50,000 in health benefits; and she was arrested in February 1991 for fraudulently making about $2,000 worth of purchases with a credit card which had been stolen from B-E. Cantrell had not filed a tax return since 1976, and had evaded the payment of $50,872-taxes on legal and illegal earnings-during her tenure at B-E alone. Based on her false bankruptcy petition statements, she was excused from approximately $88,000 of debt. She received $2,720 in state unemployment benefits which she was not entitled to receive.
 
 
 4
 The PSR grouped together the bankruptcy and Social Security fraud counts under U.S.S.G. Sec. 3D1.2(d) (1989). The PSR determined a base offense level of 6 and imposed an eight-level increase for a combined loss over $200,000, and a two-level increase because the offense involved more than one victim. The PSR added an additional two-level increase under U.S.S.G Sec. 3B1.3 because Cantrell abused a position of trust, for a total offense level of 18 on these two counts. The tax evasion count was grouped independently, and, under U.S.S.G. Sec. 2T1.1, Cantrell received a base offense level of 11 based on the amount of loss (over $40,000), a two-level increase because she failed to report over $10,000 income acquired from criminal activity in a single year, and a two-level increase for using a sophisticated means to evade discovery. This resulted in a total offense level of 15 on this count. The PSR determined a combined adjusted offense level of 20 under U.S.S.G. Sec. 3D1.4; a three-level reduction for acceptance of responsibility; a criminal history category of I; and a Guidelines range of 24 to 30 months.
 
 
 5
 At sentencing, over Cantrell's objections, the court included the $50,000 medical insurance fraud loss, the $2,000 credit card fraud loss, and the $88,000 bankruptcy loss, finding a common scheme or plan. After hearing testimony from B-E co-owner Pamela Ellersick, the court also overruled Cantrell's objections to enhancements for abuse of trust and use of a sophisticated means. Adopting the PSR's calculations, the court sentenced Cantrell to three concurrent terms of 26 months imprisonment and two years supervised release.
 
 
 6
 On appeal, Cantrell argues that her conduct did not merit an increase for using a sophisticated means or abusing a position of trust. She further argues that any abuse of trust was completely irrelevant to the bankruptcy and Social Security fraud group. Finally, she argues that the amounts she allegedly obtained from insurance and credit card fraud were completely unrelated to the counts of conviction and thus are not relevant conduct.
 
 
 7
 The district court did not clearly err in finding Cantrell used a sophisticated means to impede discovery of the nature or extent of her tax evasion. See United States v. Pierce, 17 F.3d 146, 151 (6th Cir. 1994). As used in U.S.S.G. Sec. 2T1.1(b)(2) (1989), "sophisticated means"
 
 
 8
 includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied for example, where the defendant used offshore bank accounts, or transactions through corporate shells.
 
 
 9
 Section 2T1.1, comment. (n.6). In addition to not filing an income tax form, Cantrell opened a phony "corporate" account at the same bank National used, obtained an endorsement stamp similar to National's, used a false Social Security number in various transactions, and transferred money to a series of other accounts. See United States v. Charroux, 33 F.3d 827, 836-37 (5th Cir. 1993); United States v. Becker, 965 F.2d 383, 390 (7th Cir. 1992), cert. denied, 113 S. Ct. 1411 (1993).
 
 
 10
 Cantrell's arguments regarding the abuse-of-trust enhancement also fail. An abuse-of-trust adjustment "is entitled to great deference and will not be disturbed unless clearly erroneous." United States v. Johns, 15 F.3d 740, 744 (8th Cir. 1994). Regardless of Cantrell's job title, we believe that trust was inherent in the nature of her position. See United States v. Brelsford, 982 F.2d 269, 272 & n.6 (8th Cir. 1992). By the end of her tenure, Cantrell was in charge of one of the company's accounts in its entirety, the quarterly reports to the IRS, the company's general ledger, the payroll, the petty cash, the medical insurance paperwork, the corporate credit cards, the company's bank deposits, and the preparation of business payments. She sometimes had check-signing authority and control over the office in the owners' absence. Further, the abuse of trust was relevant to the Social Security fraud, and thus should be counted in the fraud group: the indictment charged her with using a false Social Security number to conceal the funds she was able to embezzle by virtue of her trusted position at B-E. We conclude the district court's determination was not clearly erroneous.
 
 
 11
 Finally, although Cantrell does not challenge the factual basis of her insurance and credit card fraud, she argues the amounts she obtained from these were completely unrelated to her counts of conviction. This argument is irrelevant as to the fraud group-Cantrell's base offense level for this group was based on over $200,000 in actual loss, and this base offense level would still apply even without counting the insurance and credit card fraud losses. As to the tax count, the PSR did not include the insurance and credit card losses in calculating the amount of taxes Cantrell owed and evaded. Instead, the tax loss amounts totalled $50,872 and reflected only employment income, embezzled funds, unemployment compensation, and interest income from 1988 to 1990.
 
 
 12
 Accordingly, the judgment is affirmed.
 
 
 
 [1]
 The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri