## In re Kim Allen SHARP, Debtor.

### Ronald Roudebush, Plaintiff,

### v.

### Kim Allen Sharp, Defendant.

Bankruptcy No. 98–61839–R.
Adversary No. 99–4206.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Feb. 14, 2000.

---

Mark Shapiro, Southfield, MI, for Plaintiff.

Stuart Gold, Southfield, MI, James Dunn, Bloomfield Hills, MI, for Defendant.

Samuel Sweet, Troy, MI, for trustee.

Supplemental Opinion

STEVEN W. RHODES, Bankruptcy Judge.

On December 21, 1998, the debtor, Kim Allen Sharp, filed a voluntary chapter 7 bankruptcy petition. On March 26, 1999, Ronald Roudebush, a creditor, and Fred Dery, the trustee, filed an adversary proceeding seeking a denial of Sharp's discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4) and (5). The trustee also filed a motion seeking turnover of certain assets pursuant to § 542. Following trial, the Court concluded that Sharp intentionally concealed assets, failed to keep records, made false oaths and failed to explain satisfactorily the loss of assets. Accordingly, Sharp's discharge was denied. Further, the trustee's motion for turnover of assets was granted. This opinion supplements the opinion given in open court following the trial.

I.

11 U.S.C. § 727 provides:
The court shall grant the debtor a discharge, unless—

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

. . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a)(2), (3), (4) & (5).

The bankruptcy process was designed to help "honest but unfortunate debtors." *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (citation omitted). The bankruptcy code requires a debtor to cooperate in the bankruptcy process by imposing certain disclosure requirements. In describing the nature and extent of the disclosure obligations of debtors in chapter 7, the judicial pronouncements in the cases are quite firm. "A debtor's complete disclosure is essential to the proper administration of the bankruptcy estate." *Cohen v. McElroy (In re McElroy)*, 229 B.R. 483,

488 (Bankr.M.D.Fla.1998). "The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Code." *Van Roy v. Watkins (In re Watkins)*, 84 B.R. 246, 250 (Bankr. S.D.Fla.1988) (citing *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984). "The obligation of full disclosure is crucial to the integrity of the bankruptcy process.") *In re Hyde*, 222 B.R. 214, 219 (Bankr.S.D.N.Y.1998), *rev'd on other grounds*, 235 B.R. 539 (S.D.N.Y. 1999). "Debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately." *In re Famisaran*, 224 B.R. 886, 891 (Bankr.N.D.Ill.1998) (citation omitted). "The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." *Casey v. Kasal (In re Kasal)*, 217 B.R. 727, 734 (Bankr.E.D.Pa.1998), *aff'd*, 223 B.R. 879 (E.D.Pa.1998). "The burden is on the debtors to complete their schedules accurately." *Rion v. Spivey (In re Springer)*, 127 B.R. 702, 707 (Bankr.M.D.Fla.1991). "The burden is on the debtors to use reasonable diligence in completing their schedules and lists." *Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier)*, 71 B.R. 212, 215 (9th Cir. BAP 1987). "Candor, accuracy and integrity are required of a debtor in bankruptcy." *Holder v. Bennett (In re Bennett)*, 126 B.R. 869, 875 (Bankr.N.D.Tex.1991). "[S]chedules are to be complete, thorough and accurate in order that creditors may judge for themselves the nature of the debtor's estate." *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 563 (Bankr.S.D.Cal.1996). "The bankruptcy laws impose a strict obligation on debtors to file complete and accurate schedules." *In re Dubberke*, 119 B.R. 677, 680 (Bankr.S.D.Iowa 1990) (citation omitted). "If there is any doubt or uncertainty whatsoever as to a possible interest in any property, the asset should be scheduled with an appropriate explana-

tion[.]" *American State Bank v. Montgomery (In re Montgomery)*, 86 B.R. 948, 959 (Bankr.N.D.Ind.1988).

▮▮▮▮▮ The connection between the debtor's obligation to file complete and accurate schedules and the fair administration of the bankruptcy case is clear.

> The dual purposes of a Chapter 7 bankruptcy case are to grant the honest debtor a discharge of his or her prepetition debts and to provide a mechanism for the fair and orderly distribution of the debtor's assets that are subject to administration by the Trustee. These purposes are fully realized when a debtor complies with the requirement that he or she submit accurate and complete information concerning identification of creditors and assets.

*North River Ins. Co. v. Baskowitz (In re Baskowitz)*, 194 B.R. 839, 843 (Bankr. E.D.Mo.1996). The administration of a bankruptcy case, of course, includes "determining whether crimes have been committed, whether objections to exemptions should be filed, and whether property should be claimed for the estate or abandoned." *In re Gaines*, 106 B.R. 1008, 1013 (Bankr.W.D.Mo.1989), *rev'd on other grounds*, 121 B.R. 1015 (W.D.Mo.1990).

▮▮▮▮▮ "The requirement that the debtor list property serves at least two functions. One is to settle claims of title, so that on the date of discharge everyone knows who owns what. The other is to allow the trustee to decide which claims to challenge." *Payne v. Wood*, 775 F.2d 202, 206 (7th Cir.1985). Thus, to a substantial extent, the trustee's ability to perform the duties set forth in 11 U.S.C. § 704 depends on the accuracy and completeness of the debtor's disclosures. Further, under 11 U.S.C. § 554(c) only scheduled property, not otherwise administered, is deemed abandoned to the debtor when the case is closed. *See Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir.1995).[1]

---

**1.** In addition, the National Bankruptcy Review Commission recently concluded, "The

In the context of an objection to a discharge under § 727, the plaintiffs bear the burden of proof by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc. v. Adams* (*In re Adams*), 31 F.3d 389, 394 (6th Cir.1994).

## II.

In the present case, Sharp does not controvert most of the failures to disclose alleged by the Plaintiffs. Therefore, to a great extent the issue before the Court is whether the Plaintiffs have established Sharp's wrongful intent by a preponderance of the evidence, or whether it appears that his various failures to disclose and other alleged conduct is innocent or otherwise inadvertent. The Court finds that the following allegations were proven at trial:

Sharp failed to disclose his interest in a bank account in his father's name. The evidence establishes that all of the money in that account was Sharp's money and that on the date of the petition there was approximately $1,200 in the account. Sharp failed to disclose this bank account both in the original schedules (Schedule B) and at the meeting of creditors.

In the statement of financial affairs, Sharp failed to disclose a $2,000 transfer to Sherry Celesti (his girlfriend) that he made approximately one week before filing bankruptcy.

Sharp failed to disclose four credit card creditors and the debts he owed to them.

Sharp also failed to disclose a $6,500 debt owing to him from Patricia Sharp (his former spouse) arising from their property settlement agreement. Sharp claims that the $6,500 is actually owed by Patricia Sharp to the Internal Revenue Service, not to Sharp.[2] The Court concludes that Sharp should have disclosed this debt owing to him in his bankruptcy papers, because there are legal documents establishing this as a debt owing to him. That there may be other circumstances establishing this debt other than as it appears is no justification for Sharp's failure to disclose this matter. As noted earlier, disclosure is the necessary first step to allow the trustee and creditors to evaluate the assets from the estate's perspective, and Sharp's failure to disclose this asset deprives this estate, the trustee and the creditors of that opportunity to evaluate this asset.

## III.

The primary issue in the case is whether these omissions and concealments were knowing and fraudulent within the meaning of 11 U.S.C. § 727(a)(2) and (4). To a great extent, the Court's evaluation of this intent element turns upon the Court's evaluation of Sharp's credibility as a witness here. The Court concludes that these omissions and concealments, together with numerous other concealments in the case, establish that Sharp has acted with sufficient knowing and fraudulent intent that his discharge must be denied.

The Court determines that Sharp lacked credibility as a witness. This determination is based upon his demeanor while testifying in court. The Court found Sharp's testimony to be evasive and rambling, even after he was warned repeatedly on this point. His testimony was inconsistent and at times even incoherent. Fur-

debtor's financial rehabilitation can be advanced by preparing and filing complete and accurate papers." *1998* BANKRUPTCY REVIEW COMM'N, REPORT, 108.

**2.** The Plaintiffs alleged that Sharp also failed to disclose an interest in a time share. Sharp asserted that he has no interest in that time share and that it is owned exclusively by his ex-wife, Patricia Sharp. The Court concludes that the preponderance of the evidence establishes that the time share is and has always been legally and equitably the exclusive property of Patricia Sharp and that Sharp had no legal or equitable interest that he was required to disclose in this bankruptcy case. The Plaintiffs produced no documents which establish any such interest. Accordingly that aspect of the Plaintiffs' claim is dismissed and Sharp's failure to disclose the time share is not construed against him.

ther, his testimony was not consistent with the responses that might be expected of an honest and forthright person. Ultimately, his testimony simply did not give the Court the impression that he was telling the truth. His testimony exposed him anything but an "honest but unfortunate debtor." *Grogan,* 498 U.S. at 287, 111 S.Ct. 654. Accordingly, Sharp is not entitled to a discharge of his debts.

The evidence establishes an extensive pattern of deceit by Sharp. Most significantly, Sharp did not read the schedules and the statement of financial affairs before he signed and caused them to be filed. Thus, his declaration to that effect, which he signed, was false. This is deeply disturbing. The Court cannot condone or tolerate signing the schedules and the statement of financial affairs before they are completed. Such important legal documents cannot be treated so cavalierly by a debtor who is asking the law to discharge him of his debts. In a fundamental way, this conduct demonstrates Sharp's reckless attitude towards the bankruptcy process and towards his duties as a debtor.

The additional following failures to disclose further evince Sharp's deceit:

Sharp did not disclose his right to a bonus or a dividend from his employer, nor did he disclose his right when he filed bankruptcy to two weeks pay and to reimbursement of outstanding business expenses from his employer.

Sharp did not disclose his security deposit with his landlord in Schedule B.

Sharp testified not only inconsistently but truly incoherently about whether the property listed in Schedule B was intended to be a disclosure of his property in his Cincinnati home or in his Commerce Township, Michigan, apartment. (Tr. 341 Meeting p. 18.)

Sharp testified falsely at the meeting of creditors that he was not aware of any of his parents' bank accounts. (Id. at 94.)

Sharp failed to disclose that he made a substantial deposit to the account in his father's name just two days after filing bankruptcy.

Sharp's disclosure in Schedule B that he had no cash on hand appears from his subsequent testimony to have been false.

At his meeting of creditors, Sharp testified falsely that his property settlement with Mrs. Sharp had not yet been signed. (Id. at 9–10.)

Finally, Sharp testified falsely that his paychecks from his employer were deposited into his joint account with his father, whereas it appears that a number of these paychecks were deposited into the account that was solely in his father's name. (Tr. 341 meeting at 60.)

### IV.

This is not a case of one or two or a few inadvertent omissions, as can happen in any case and probably happens in most cases. Nor is this a case where a trustee and a particularly aggressive creditor flyspecked Sharp's papers looking for problems, finding minor immaterial issues to complain about. Rather, the evidence establishes that a full disclosure of each of the matters that Sharp omitted would have been material to the administration of the bankruptcy case.

The materiality of the omitted bank account in his father's name is clear. As to the $6,500 debt from Mrs. Sharp, although Sharp thought that it was a debt owed by her to the IRS, his omission of that debt, despite the legal papers establishing that the debt was owed to him, deprived the estate of an opportunity to evaluate that independently. The omission of the credit card creditors and their debts deprived those creditors of notice of the bankruptcy and an opportunity to participate in the bankruptcy process. The omission of the $2,000 transfer to Ms. Celesti deprived the trustee and creditors of an opportunity to investigate whether that transfer was a fraudulent conveyance or a preference that

might be recoverable by the estate for the benefit of creditors.

Accordingly, the Court finds that Sharp knowingly and fraudulently made several false oaths. Therefore his discharge is denied under § 727(a)(4)(A).

### V.

The Plaintiffs also claim that Sharp's use of an account in his father's name was a concealment of his property, both within one year before the petition was filed, and of estate property after the bankruptcy was filed, with intent to hinder, delay or defraud creditors under § 727(a)(2). The Court finds that the evidence establishes this claim as well.

█ Sharp offered all manner of explanations for his use of an account in his father's name to pay his credit card bills. Without reviewing each of those explanations, it is sufficient simply to find that these justifications were inconsistent, more than a bit silly in some cases, and in the end just plain dishonest. The Court finds that this account was maintained to protect Sharp's assets from his creditors, especially the bank to whom he owed money and Roudebush, and thus was maintained to delay and hinder them. Accordingly, the Plaintiffs' objection to the discharge under § 727(a)(2) is sustained, and the discharge is denied under this provision.

### VI.

█ Moreover, the Court concludes that the evidence firmly establishes that Sharp failed to keep records from which his financial condition and business transactions could be ascertained. Sharp did not keep credit card receipts or monthly statements, nor did he keep most bank statements for his bank accounts. These simple records would form the core of what the trustee and creditors would need to ascertain Sharp's financial condition and business transactions, and yet Sharp did not preserve them.

Sharp did obtain a few of these records after the bankruptcy was filed. However, Sharp did not obtain most of the necessary records, and in any event, the record of this bankruptcy proceeding establishes that Sharp turned over those records only after substantial effort by the trustee that should not have been necessary. The Court concludes that there is nothing in the record which justifies this failure to keep these records. Accordingly, Sharp's discharge is denied under § 727(a)(3) as well.

### VII.

█ Finally, the Court concludes that the evidence also justifies denying Sharp's discharge for failing to satisfactorily explain what happened to the proceeds of the sale of Sharp's Pontiac vehicle. Sharp kept no records as to that, and the only evidence that Sharp offered regarding those proceeds and their disposition was his testimony that he used those proceeds to pay bills and expenses. Given the lack of credibility that the Court has already found in Sharp's testimony, that explanation cannot be accepted as satisfactory within the meaning of the statute. Accordingly, Sharp's discharge is also denied under § 727(a)(5).

### VIII.

The trustee also filed a motion to compel Sharp to turnover nonexempt and undisclosed assets pursuant to §§ 541 and 542. The first item which the trustee seeks is Sharp's security deposit with his landlord. There was conflicting testimony regarding the amount of the security deposit. However, Sharp testified at trial that he intended to turn the security deposit over to the trustee when he received it. Accordingly, the Court will order Sharp to turn over whatever portion of his security deposit that he receives back from the landlord. If Sharp has already received it back, the Court will order him to pay it within 30 days. Otherwise, he should turn

it over to the trustee within five days after receiving it from the landlord.

 The trustee also seeks turnover of $1,185.52, funds on deposit in First Federal of Michigan, account number 3380787, which are held in Sharp's father's name. The Court has already concluded that Sharp's failure to disclose that account and the funds on deposit in that account was with intent to conceal. However, the law does not permit Sharp to exempt concealed property. *In re Montanez*, 233 B.R. 791, 796 (Bankr.E.D.Mich.1999); *In re Stinson*, 221 B.R. 726, 728 (Bankr. E.D.Mich.1998); *In re Lundy*, 216 B.R. 609, 610 (Bankr.E.D.Mich.1998).[3] Accordingly, the Court orders Sharp to turn that amount over to the estate within 30 days.

The trustee further seeks turnover of deposits in the amount of $2,428.30 that Sharp made immediately after he filed bankruptcy and that, again, he did not disclose. For the same reasons, the Court orders immediate turnover of those funds.

Finally, the trustee's motion also requests turnover of a Rolex watch. However, the trustee did not addressed this property at all in the trial. Therefore, the Court will deny the motion as to that item.

### IX.

In conclusion, Sharp intentionally concealed assets, failed to keep records, and made false oaths, and failed to explain satisfactorily the loss of assets. Accordingly, Sharp's discharge is denied pursuant to § 727. Further, Sharp cannot be permitted to exempt assets which were concealed. Accordingly, the trustee's motion for turnover of assets is granted.

---

**3.** *See also* 11 U.S.C. § 522(g)(1), which permits the debtor to exempt property recovered by the trustee, but only if the transfer of the property was neither voluntary nor concealed by the debtor. *Glass v. Hitt (In re Glass),* 60 F.3d 565, 568 (9th Cir.1995); *Sherk v. Texas Bankers Life & Loan Ins. Co. (In re Sherk),* 918 F.2d 1170, 1176 (5th Cir.1990); *Simonson v. First Bank of Greater Pittston (In re Simonson ),* 758 F.2d 103, 106 (3d Cir.1985); *Redmond v. Tuttle,* 698 F.2d 414 (10th Cir. 1983); *Trujillo v. Grimmett (In re Trujillo ),* 215 B.R. 200, 204–05 (9th Cir. BAP 1997), aff'd, 166 F.3d 1218 (9th Cir.1998).