In re Anthony RICCARDO a/k/a Anthony Joseph Riccardo and Tracie Ann Riccardo a/k/a Tracie Colleton, Debtors.

No. 99 B 12036 ASH.

United States Bankruptcy Court, S.D. New York.

May 25, 2000.

See also 248 B.R. 726, 248 B.R. 727, 248 B.R. 729, and 248 B.R. 731.

718

Oxman, Natale, Friedman, Geiger & Tulis, P.C., by Mark S. Tulis, Hawthorne, NY, for Chapter 7 Trustee.

Office of the United States Trustee, by Pamela J. Lustrin, New York City.

Clair & Gjertsen, by Gary R. Gjertsen, Scarsdale, NY, for debtor.

### MEMORANDUM DECISION DISMISSING CASE FOR USE OF FALSE SOCIAL SECURITY NUMBER

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

This decision concerns what has become an all too prevalent and pernicious prac-tice, the use of false social security numbers in debtors' petitions and notices of case commencement. Falsification of social security numbers is a species of fraud, specifically that of "identity fraud," which threatens to undermine the integrity of the bankruptcy process. The decisions in this case (involving intentional use of multiple false social security numbers) and four other cases, *In re Gonzalez*, 248 B.R. 731 (Bankr.S.D.N.Y.2000) (revocation of discharge and dismissal without prejudice for use of false social security number due to counsel's failure to submit correct number), *In re Minetos*, 248 B.R. 729 (Bankr. S.D.N.Y.2000) (same), *In re Anderson*, 248 B.R. 726 (Bankr.S.D.N.Y.2000) (dismissal with prejudice for use of false social security number and refusal to reveal correct social security number), and *In re Isaza*, 248 B.R. 727 (Bankr.S.D.N.Y.2000) (dismissal with prejudice for use of false social security number where debtor had no actual social security number at all), are published today to make public this Court's views on the use of false social security numbers in bankruptcy proceedings. Three similar decisions are issued today but not published, *In re Boine*, 99 B 22541(ASH) (Bankr.S.D.N.Y. May 25, 2000) (dismissal without prejudice for use of false social security number as a probable result of typographical error), *In re Alvino*, 00 B 20148(ASH) (Bankr.S.D.N.Y. May 25, 2000) (same) and *In re Wood*, 00 B 11358(ASH) (Bankr.S.D.N.Y. May 25, 2000) (same).[1]

### Background

This case was commenced by the debtors on December 28, 1999. Anthony Riccardo's[2] use of a false social security number came to light when the debtors' prior

1. All eight cases are no asset Chapter 7 cases. No case other than a no asset Chapter 7 case has come before this Court involving an incorrect social security number.

2. It appears that Tracie Ann Ricardo used her correct social security number.

counsel made a motion to be relieved as counsel after he received a call from the IRS noting the discrepancy between the social security number Anthony Riccardo used on his tax returns and that used on his petition. After a hearing on the motion on January 28, I granted prior counsel's request.

On his petition Anthony Riccardo listed 095–43–6771 as his social security number. His correct number, that which appears on his social security card and which he used on his tax returns, is 056–48–5697. On February 28 the Chapter 7 Trustee moved to dismiss the debtors' case for cause for use of an incorrect social security number pursuant to 11 U.S.C. § 707(a). At the April 5 hearing on this motion, both Anthony and Tracie Ann Riccardo appeared with new counsel.

The Riccardos have suggested a number of explanations for Anthony's use of a false social security number, none of which is either credible or consistent. The first explanation, appearing in prior counsel's affirmation in support of his motion to withdraw, was that the debtors did not know that the number they supplied and verified as correct was incorrect. At the January 28 hearing on the motion to withdraw, a different explanation emerged. Anthony Riccardo testified that he had used this incorrect social security number "for years" and, when asked why, his explanation was that "[t]here was four Anthony Riccardos living at my house." (Jan. 28 Hearing Tr. at 4) When asked about the number he used on his tax returns, he explained cryptically that, having been delinquent in filing returns for the last four or five years, he filed all his prior years' returns at once and, although the incorrect number was used initially,

> Then it came back that that wasn't my social security. Then I went through all

my papers and everything like that and I found my card which I gave to Mr. Schwartz that that was the social security number.... So with the wrong social security the IRS sent back that that wasn't my social security number, that that social security number was never issued for some reason.

(Jan. 28 Hearing Tr. at 6) Beyond these sundry explanations, and despite the fact that Anthony had his card in his possession all along, yet another explanation emerged at the April 5 hearing——that a prior employer used the incorrect number beginning in 1987 and that he used that number ever since for "now almost 20 something years." [3] (April 5 Hearing Tr. at 5)

The Riccardos had been apprised by prior counsel of the importance of using correct social security numbers at the very outset of his retention. In a January 22, 1999 retention letter, nearly a year before the debtors' petition was filed, prior counsel specifically warned that "[t]he papers that we will be preparing on your behalf must contain truthful and accurate statements. It is a federal crime to make false statements or omit information." Anthony Riccardo signed this retention letter, printing his social security number below his signature as 095–43–6771, the incorrect number. The debtors also signed an affidavit required by their prior counsel, under penalty of perjury, verifying that they had carefully reviewed the petition and affirming that "I am not and have not been known by any other names or have any other Social security number."

In another sworn statement dated April 3, 2000 and submitted in opposition to the Chapter 7 Trustee's order to show cause, Anthony Riccardo asserted that he had "obtained credit ... since 1987" using this incorrect number and that "bank records

---

**3.** This last implausible explanation begs the questions where the prior employer obtained the wrong number, why an employer would obtain a social security number from anyone other than the employee, and why Anthony Riccardo would not only permit but perpetuate the use of a false number, especially since he would thereby prejudice his own social security account.

from 1988 showing that the income reported by my bank and mortgage company to the IRS was reported under the Incorrect Number." Compounding the mischief, Anthony Riccardo's credit report from Trans Union (one of the three credit reporting agencies), which he submitted as an exhibit to his affidavit in opposition, reports his credit history not under the false social security number listed on his petition (095–43–6771), nor his correct number (056–48–5697), but under a third, and obviously false, number (095–22–6771). No credit accounts are reported under the false number used on the petition, which is precisely the problem created by use of false social security numbers. Of the accounts reported under the second false number (095–22–6771), the maximum credit utilized is listed as $116,000, or only 28% of the dollar amount of the Riccardos' scheduled unsecured debt.

The inconsistencies in the record support if not compel an inference that Anthony Riccardo intended to deceive his prior counsel, the IRS, his creditors, and this Court.

Tracie Ann Riccardo's statements before this Court fortify the conclusion that the Riccardos actively sought to deceive both present and future creditors. For example, she said:

> We never even planned on filing bankruptcy. Our plan was to work with these creditors and pay them monthly. We never wanted to do this. I'm going to have within the next six years four children who are all going to be going to college, and my intent is to have the best credit possible so that any loans that my children needed and my home would be able to put up for a second and third mortgage so that the four of them would

be good productive adults. That was always our plan.

(Jan. 28 Hearing Tr. at 11) This statement must be viewed in the context of the Riccardos' debts and their income. In addition to secured debt of $141,000 (home mortgage), their Schedule F listing creditors holding unsecured non-priority claims comprises 18 pages and comprehends an astounding $408,677.62 in unsecured debt owed on 87 separate accounts all of which appears to be for consumer and vacation spending, except three accounts for medical debts and one unspecified account, all four totaling only $14,851.50. Yet, in the tax returns submitted in connection with prior counsel's withdrawal motion, the debtors showed for tax year 1997 a joint gross income of only $5,250, all of which was derived from Anthony's operation of a car service with gross receipts of $18,659 and expenses of $13,409,[4] and similar figures for the tax year 1998 with gross income of $6,030. In stunning contrast to this *de minimis* income reported on their tax returns, on their petition the debtors listed four dependent children and total current *monthly* expenditures of $3,693. It appears that, for whatever reason, the Riccardos lived in a style far in excess of their means, perhaps facilitated in part through the manipulation of Anthony's financial identity through the use of at least two false social security numbers.[5]

Colloquially put, the numbers do not add up. A family of six obviously cannot live on approximately $6,000 a year at a monthly expense rate of $3,000 or more except by incurring credit card debt far beyond their ability ever to repay (thus raising serious dischargeability issues under Section 523(a)(2)). The debtors' own financial information undermines the credi-

---

4. Tracie Ann Riccardo stated at the April 5 hearing that she "stopped working two years ago" (April 5 Hearing Tr. at 8), *i.e.* in 1998, although no income is reflected on the debtors' 1997 joint tax return as having been earned by her.

5. Tracie Ann Riccardo stated at the April 5 hearing that, during the terminal illness of their adopted daughter, they took vacations to Florida and the Amish country, knowing that they could not afford them, in order to make the children happy. (April 5 Hearing Tr. at 10)

bility of their declared intent "to work with these creditors and pay them monthly."

Tracie Ann Riccardo's statement of her "intent [ ] to have the best credit possible" for future borrowings illustrates, unwittingly, one of the potential abuses of using fictitious social security numbers. The practice enables a dishonest person to accumulate large debts for discharge in a bankruptcy using a false social security number, then promptly obtain a clean credit rating to borrow again under a different social security identity in fraud of future creditors.

The misconduct here is not trivial or immaterial. Anthony Riccardo has employed at least two false social security numbers. The importance of using a correct social security number is underscored in a case where both debtors reveal "a/k/a" names. The social security number on his petition was false. The use of this false number was not an inadvertent or typographical error. The consequences are reflected in the Riccardos' unsecured debt, which is astronomical in relation to their resources and income, and their credit report which, under a different but false social security number, reveals only a fraction of their actual debt.

### Identity Fraud

■ Misrepresentation of a debtor's social security number is a species of what has been aptly termed "identity fraud." *See* 35 BCD Weekly News & Comment, Issue 8 at A5 (Jan. 11, 2000). The potential for abuse from this sort of identity fraud is alarming. For example, many creditors (particularly those handling high volumes of consumer credit transactions) may rely on social security numbers rather than or in addition to an individual's surname to uniquely identify the obligor. Such creditors, although listed on the debtor's schedules, will not receive adequate notice of a debtor's bankruptcy case even if they receive actual notice of the filing, for the misrepresented social security number may well result in the creditor's inability to associate the notice of case

commencement with its obligor. The creditor is thus deprived of any meaningful ability to safeguard its rights in the bankruptcy process. Credit agencies must rely on the accuracy of social security numbers to identify individuals who have filed for bankruptcy protection, and other creditors, in turn, rely on the absence of any notation of a bankruptcy in a credit record in making credit decisions. And, of course, a misrepresented social security number could have a damaging effect upon an innocent person whose social security number "identity" has been misappropriated.

Two articles in the public press within the past month give dramatic anecdotal evidence of the burgeoning epidemic of identity fraud. Timothy L. O'Brien reports in *The New York Times* April 3, 2000, p. A1 under the headline "Officials Worried Over A Sharp Rise In Identity Theft":

> Law enforcement authorities are becoming increasingly worried about a sudden, sharp rise in identity theft, the pilfering of people's personal information for use in obtaining credit cards, loans and other goods.

> \* \* \* \* \* \*

> The Social Security Administration said it had received more than 30,000 complaints about the misuse of Social Security numbers last year, most of which had to do with identity theft. That was up from about 11,000 complaints in 1998 and just 7,868 complaints in 1997.

*See also* Stacy Sullivan's article "How I Lost My Good Name" on the Op–Ed page of *The New York Times* April 17, 2000, p. A19 in which the writer, a victim of social security number theft, describes as "a Kafkaesque maze" the "six-month battle of trying to clear my name [with] phone companies, the credit bureaus and two collection agencies."

That the problem of identity fraud through the misrepresentation of social security numbers is a serious issue is reflected in the fact that such conduct may

be a criminal offense. It is a crime under the Social Security Act, 42 U.S.C. § 408(a)(7)(B), "for any other purpose ... with intent to deceive [to] falsely represent[ ] a number to be the social security account number ... when in fact such number is not the social security account number." *See, e.g., United States v. Cantrell,* 48 F.3d 1225 (8th Cir.1995) (table decision, unpublished text available on Westlaw under 1995 WL 110358) (discussing application of federal sentencing guidelines both to bankruptcy fraud under 18 U.S.C. § 152 and social security fraud under 42 U.S.C. § 408(a)(7)(B) in connection with opening accounts and filing tax returns using false social security numbers). *See also United States v. Ellis,* 50 F.3d 419, 427–28 (7th Cir.1995), *cert. denied,* 516 U.S. 849, 116 S.Ct. 143, 133 L.Ed.2d 89 (1995) (conviction for use of false social security number under 42 U.S.C. § 408(a)(7)(B) in connection with H.U.D. loan and insurance applications), citing *United States v. Darrell,* 828 F.2d 644, 647 (10th Cir.1987).

■ Use of a false social security number in filing a bankruptcy petition may also be chargeable as a bankruptcy crime under 18 U.S.C. § 152, which makes punishable by a fine or up to five years imprisonment or both an act by

A person who—

\* \* \* \* \* \*

(2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

(3) knowingly and fraudulently makes a false declaration, certificate, verification or statement under penalty of perjury under section 1746 of title 28, in or in relation to any case under title 11;

*See United States v. Ellis,* 50 F.3d at 426 ("... circumstantial evidence is sufficient to prove the fraudulent intent required to secure a conviction under § 152 .... the omissions in question were no mistake. Mr. Ellis filed for bankruptcy eight times between 1980 and 1991; he used four different social security numbers in making those filings"). The materiality of a false social security number in the context of bankruptcy crime was noted in a dictum by the Seventh Circuit:

> The statute is therefore construed to require that the false oath be in relation to some material matter.... ["]Materiality in this context does not require harm to or adverse reliance by a creditor, nor does it require a realization of gain by the defendant. Rather, it requires that the false oath or account relate to some significant aspect of the bankruptcy case or proceeding in which it was given, or that it pertain to the discovery of assets or to the debtor's financial transactions. Just what is significant is difficult to say for the general case: failing to disclose ownership of a ream of paper in a multi-million dollar bankruptcy is probably not material, but in many cases a false social security number or a false prior address may be.["]

*United States v. Gellene,* 182 F.3d 578, 587–88 (7th Cir.1999), citing 1 *Collier on Bankruptcy* ¶ 7.02[2][a][iv] at 7–46 to 7–47.

The evil represented by the intentional use of false social security numbers on bankruptcy petitions was succinctly stated in *United States v. Phillips,* 606 F.2d 884, 887 (9th Cir.1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980):

> The three false statements in the bankruptcy petition other than the understatement of assets are all material. As with the loan application charge, the false social security number might have impeded an investigation into the appellant's financial history, and might have misled creditors as to the identity of the petitioner.... In addition, since bankruptcy is permitted only once in seven years [technically, an individual debtor may only receive a discharge once every six years, *see* 11 U.S.C. § 727(a)(8),(9) ], prior names and accurate social security information would be material to the

determination of appellant's eligibility to petition for bankruptcy.

The criminal consequence of using a false social security number is reflected in a recent edition of the Bankruptcy Court Decisions Weekly News & Comment reporting on a criminal prosecution for social security number fraud:

Eleanor Ann Ellis, 52, of Venice, N.Y. pleaded guilty to bankruptcy fraud on March 6 before Minneapolis District Court Judge David Doty.

During her guilty plea hearing, Ellis admitted that when she filed for bankruptcy in Minnesota in April 1995, she used a false social security number. She also admitted using a different false social security number in a 1990 bankruptcy petition filed in the State of New York. Her fraudulent use of a social security number in the Minnesota case resulted in the inappropriate discharge of more than $460,000 in debt.

Ellis faces a maximum penalty of five years in prison and/or a $250,000 fine.

35 BCD Weekly News & Comment, Issue 18 at A5 (March 21, 2000).

### *Remedy*

■ The extraordinary privilege of a discharge of debts in bankruptcy is intended for the "honest but unfortunate debtor," *see Cohen v. De La Cruz*, 523 U.S. 213, 217, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998); *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Casse*, 198 F.3d 327, 332 (2d Cir.1999). The courts have uniformly recognized that full and accurate disclosure of all material information is vital to the bankruptcy process. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir.1994) (in the context of Chapter 11, " 'Full and fair' disclosure is required during the entire reorganization process; it begins 'on day one, with the filing of the Chapter 11 petition.' "); *In re Wincek*, 202 B.R. 161, 166 (Bankr.M.D.Fla.1996), *aff'd*, 208 B.R. 238 (M.D.Fla.1996) (" '[F]ull disclosure of all relevant information has al-

ways been an important policy of the bankruptcy laws.' "). As recently and comprehensively stated by Bankruptcy Judge Rhodes in *In re Sharp*, 244 B.R. 889, 891–92 (Bankr.E.D.Mich.2000):

The bankruptcy code requires a debtor to cooperate in the bankruptcy process by imposing certain disclosure requirements. In describing the nature and extent of the disclosure obligations of debtors in chapter 7, the judicial pronouncements in the cases are quite firm. "A debtor's complete disclosure is essential to the proper administration of the bankruptcy estate." *Cohen v. McElroy (In re McElroy)*, 229 B.R. 483, 488 (Bankr.M.D.Fla.1998). "The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Code." *Van Roy v. Watkins (In re Watkins)*, 84 B.R. 246, 250 (Bankr.S.D.Fla.1988) (citing *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984). "The obligation of full disclosure is crucial to the integrity of the bankruptcy process.") *In re Hyde*, 222 B.R. 214, 219 (Bankr.S.D.N.Y. 1998), *rev'd on other grounds*, 235 B.R. 539 (S.D.N.Y.1999). "Debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately." *In re Famisaran*, 224 B.R. 886, 891 (Bankr.N.D.Ill.1998) (citation omitted). "The debtor is imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." *Casey v. Kasal (In re Kasal)*, 217 B.R. 727, 734 (Bankr.E.D.Pa.1998), *aff'd*, 223 B.R. 879 (E.D.Pa.1998). "The burden is on the debtors to complete their schedules accurately." *Rion v. Spivey (In re Springer)*, 127 B.R. 702, 707 (Bankr. M.D.Fla.1991). "The burden is on the debtors to use reasonable diligence in completing their schedules and lists." *Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier)*, 71 B.R. 212, 215 (9th

Cir. BAP 1987). "Candor, accuracy and integrity are required of a debtor in bankruptcy." *Holder v. Bennett* (*In re Bennett*), 126 B.R. 869, 875 (Bankr. N.D.Tex.1991). "[S]chedules are to be complete, thorough and accurate in order that creditors may judge for themselves the nature of the debtor's estate." *Garcia v. Coombs* (*In re Coombs*), 193 B.R. 557, 563 (Bankr.S.D.Cal.1996). "The bankruptcy laws impose a strict obligation on debtors to file complete and accurate schedules." *In re Dubberke*, 119 B.R. 677, 680 (Bankr. S.D.Iowa 1990) (citation omitted). "If there is any doubt or uncertainty whatsoever as to a possible interest in any property, the asset should be scheduled with an appropriate explanation[.]" *American State Bank v. Montgomery* (*In re Montgomery*), 86 B.R. 948, 959 (Bankr.N.D.Ind.1988).

 Failure to make full and accurate disclosure may bar the debtor's right to discharge, 11 U.S.C. § 727(a)(3), (4), *In re Sharp, supra,* and may constitute a bankruptcy crime, 18 U.S.C. § 152(1), (8) and (9). The use of a false social security identity in a Title 11 petition corrodes the integrity and fair administration of the bankruptcy process.

 This decision and its companion decisions are being published to give notice to the practicing bar that a discharge in bankruptcy will not be granted to those who use false social security numbers whether intentionally or mistakenly. Whether a debtor's use of a false social security number, and the subsequent failure to correct that error, was intentional or not is of little of concern to present or future creditors, whose rights and interests may be prejudiced by the error regardless of the debtor's intent to defraud or lack of it. In either case the false information undermines the fundamental

objectives of the Bankruptcy Code, which include complete and accurate disclosure of all relevant information and meaningful notice to all parties in interest. It is at least as important to represent accurately the debtor's social security number as any other information required to be set forth in the petition. At a minimum, a debtor who files a petition with a false social security number violates his or her oath made in signing the petition and is not entitled to a discharge under 11 U.S.C. § 727(a)(4)(A). Use of a false social security number in this Court will result in the automatic dismissal and closure of a debtor's case or, if discovered after issuance of a discharge, reopening of the case, revocation of a debtor's discharge and dismissal, with notification to all creditors, the U.S. Trustee's office and the three credit reporting agencies.

 In some circumstances it may be appropriate to bar a debtor who has intentionally used a false social security number from refiling for a certain period of time under Section 105(a). *See In re Casse, supra,* 198 F.3d at 333–42. Such a remedy is most often invoked in the case of a serial refiler where the abuse of the bankruptcy process typically results in damage primarily to the interests of a single secured creditor. *Id.,* and cases cited therein. The potential damage to both existing and future creditors caused by the perpetration of identity fraud is far more pervasive and corrosive to the integrity of the bankruptcy process than the serial Chapter 13 filer seeking to stave off foreclosure by a single creditor. But such a determination should be made on a case-by-case basis, because it is not clear that the interests of the creditors and the objectives of the Bankruptcy Code would always be served by barring debtors from refiling.[6]

---

6. In some cases, such as where the Chapter 7 Trustee discovers substantial assets, it would improvident to dismiss the case, and the interests of creditors would be better served by retaining jurisdiction and requiring the debtor to fully disclose any alias identities or social security numbers.

In this case, dismissal is mandatory as to Anthony Riccardo. Although Tracie Ann Riccardo apparently has not used a false social security number for herself, she and her husband are joint debtors and their estates should be administered together. Anthony's use of false social security numbers may have been instrumental in the extension of their joint debt, and it cannot be determined from the record whether Tracie Ann was aware of Anthony's misconduct. As a practical matter, the entire case should be dismissed and a new case filed, if one is to be filed.

The remaining issue is whether the dismissal should be with prejudice to refiling. It is my conclusion that the dismissal in this case should be without prejudice to refiling by either debtor, notwithstanding Anthony Riccardo's palpable social security number misconduct in his financial affairs, *provided* that there is full disclosure as set forth below. In this particular case, if the debtors were precluded from refiling for a period of time some of the debtors' scores of unsecured creditors would commence litigation and obtain judgments, and some undoubtedly would not. Some creditors would pursue garnishment or other collection efforts, probably with little or nothing to show for it, and others would do nothing except continue to accrue high rates of uncollectible interest. In the usual case involving serial filers seeking to block a foreclosure, as in *In re Casse, supra*, it is plain that creditors (particularly the affected secured creditor) benefit by precluding for a limited time period a serial filer's abuse of the Bankruptcy Code by refiling, and the serial debtor is not prejudiced by barring his access to a "fresh start" because his conduct in prior filings demonstrates that the "fresh start" was not his objective. By contrast, in this case creditors generally may be harmed by a "rush to judgment" (which the Bankruptcy Code precludes in order to preserve equality among creditors) and even swift creditors may not benefit if the Riccardos are barred from refiling, whereas the Riccardos desperately need a fresh start, if they can get it. If the Riccardos choose to file again under Chapter 7, some creditors may object to discharge, either successfully or not, and many creditors will do nothing. That is their choice. But in any event, both the debtors and their creditors will have *the opportunity* to have their day in court on the issue of dischargeability, with the benefit of such disclosure as is provided in this decision.[7]

As stated long ago in a different context, but equally applicable here, "sunlight is the best disinfectant." The appropriate remedy in this case lies not in barring refiling, but in full disclosure. To that end, this decision will be served upon all creditors on the debtors' matrix and the three credit reporting agencies. Further, the debtors will be required to disclose in any new filing all prior identities or social security numbers used, as well as this decision. Should the debtors choose to refile their case, the creditors or trustee, having had the benefit of this disclosure, may pursue such remedies, if any, as may be appropriate to their circumstances under Sections 523 or 727.

---

7. The dismissals in this Court's decisions in *In re Anderson* and *In re Isaza*, published today, are both with prejudice to the debtors' right to refile (subject to an application by the debtor disclosing his true social security number) because the Bankruptcy Code objective of full and accurate disclosure is obstructed by the debtor's refusal to reveal his actual social security number (Anderson) or lack of a valid social security number (Isaza).