In re Brian G. PERRY, Debtor.

Shappell's Inc., a Florida Corporation,
Plaintiff,

v.

Brian G. Perry, Defendant.

Bankruptcy No. 99–02824–3F7.
Adversary No. 99–288.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 11, 2000.

**544**

Michael Bowlus, Brian S. Johnson, Jacksonville, for Debtor.

Norman P. Freedman, Jacksonville, for Plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on the Complaint Objecting to Discharge and/or to Except Debt from Discharge filed by Shapell's Inc. ("Plaintiff") on September 30, 1999. Defendant, Brian G. Perry ("Debtor") filed an answer on November 2, 1999. The Court conducted a trial on March 28–29, 2000. In lieu of closing argument, the Court asked the parties to submit proposed findings of facts and conclusions of law, proposed judgments, and memoranda of law. Upon review of the evidence presented and the submissions of counsel, the Court makes

the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

In February 1997, Debtor began doing business as Big Cat Construction ("BCC"). BCC cleared real property for new construction but did no vertical construction. BCC would contract with dirt hauling companies, such as Plaintiff, to assist in clearing lots. Debtor claimed that he underbid a project for a large developer that eventually forced him to cease doing business as BCC. While doing business as BCC, Debtor maintained an office at 3750 Kori Road, Jacksonville, FL, a mailing address of P.O. Box 56933, and a telephone number of (904) 262–3880. Debtor claimed that he shut down BCC around June or July of 1998. At that time Debtor claimed that BCC's only assets were leased equipment and account receivables. Debtor claimed that as these receivables were paid, he would pay BCC bills.

On February 21, 1997 Cheryl L. Styers, Debtor's sister-in-law, registered the fictitious name and began business as Concrete Land and Site Development ("CLSD"). Shortly after Debtor ceased doing business as BCC, he began working at CLSD. While working with CLSD, Debtor did the same kind of land clearing work he did as BCC.

On August 25, 1998, C.R. Styers, Debtor's mother-in-law, incorporated Big Cat Construction, Inc. ("BCC, Inc."). On November 5, 1998, C.R. Styers incorporated Concrete, Land and Site Development, Inc. ("CLSD, Inc.").[1] BCC, Inc. and CLSD, Inc. had the same listed address, mailing address, and telephone number as BCC.

Sunshine Companies, Inc. provided employees for all of these business entities. Debtor worked for Sunshine Companies, Inc. for over three years, serving as a leased employee to these business entities. No matter which entity Debtor worked for at the time, the same payroll account was used to make payroll with Sunshine Companies, Inc. from September 27, 1996 to June 10, 1999. Additionally, BCC and CLSD were co-insured under the same general liability policy.

Debtor testified as to various financial transactions between these entities. Debtor's attitude toward the Court carried the same disregard and disarray as he did toward organization in his business affairs. During June 1998, when Debtor testified that he was closing down BCC, BCC's ledger indicates cash withdrawals of $37,739.91. Debtor testified that this money went to CLSD to pay his creditors. In July 1998, Debtor made additional cash withdrawals from BCC in the amount of $6,996.35 and paid $40,731.63 to CLSD. Debtor could not properly account for these transactions and did not introduce any evidence to show that any creditors received payment and if so, in what amount. Debtor testified that one of the reasons he withdrew cash from BCC was to prevent creditors from levying on his assets.

Debtor failed to produce business records.[2] Debtor claimed BCC's business records no longer existed because business records and a computer containing business records were stolen from the office. Debtor presented no evidence to corroborate this testimony. Debtor testified that his bankruptcy schedules were incorrect, but he intended to file corrected schedules.[3] Debtor testified that CLSD, and

---

1. C.R. Styers testified that her daughter, Cheryl Styers, owned CLSD, and that C.R. Styers took over CLSD without formal agreement. C.R. Styers incorporated CLSD, Inc. and testified that she felt CLSD and CLSD, Inc. were essentially the same entities. When BCC shut down, CLSD, assisted by Debtor, took over

BCC's major accounts and employed BCC's workers.

2. Plaintiff received BCC's general ledgers and journals from Debtor's accountant.

3. Debtor filed an Amended Statement of Financial Affairs on April 28, 2000. (Doc. 48.)

subsequently CLSD, Inc., took control of BCC's leased equipment and assumed lease payments, but that the equipment was later repossessed. Debtor did not know how much, if any, was owed to the equipment leasing companies.

At some point prior to trial Debtor advised Plaintiff that no records existed for BCC, Inc. because BCC, Inc. was never operated as a business. However, BCC, Inc. maintained a bank account at South Trust Bank in Jacksonville, Florida, performed work, collected monies, and disbursed monies. In October of 1998, after BCC had supposedly shutdown, BCC, Inc. received $22,280.00 from BCC and unexplainably disbursed $25,000.00 to CLSD, Inc. BCC, Inc., CLSD, and BCC frequently wrote checks to each other. Debtor characterized some of these transfers as loans, but these "loans" were not documented.

Charles Styers, Debtor's father-in-law, testified to the history of these business entities and provided some clarity to Debtor's vague recollection of business operations. On the second day of the trial, Charles Styers presented a summary he had prepared after discovering financial documents after the first day of trial. These BCC documents were intermingled with those of CLSD and CLSD, Inc. and showed that CLSD received approximately $76,741.57 from Debtor.

On October 30, 1998 Plaintiff obtained a Final Judgment against Debtor in Case Number 98–4636–CA in the Circuit Court, Fourth Judicial Circuit, Duval County, Florida, in the amount of $70,729.87. On April 19, 1999, Debtor filed a voluntary petition for Chapter 7 bankruptcy relief. On June 17, 1999, Norman P. Freedman, Plaintiff's counsel, issued a subpoena for Rule 2004 examination that commanded C.R. Styers to produce various documents. C.R. Styers did not produce any of the listed documents at the July 9, 1999 2004 examination. On September 30, 1999, Plaintiff filed a Complaint Objecting to Discharge and/or to Except Debt from Discharge. Plaintiff objects to Debtor's discharge on various grounds. On November 2, 1999, Debtor filed an answer denying material allegations in Plaintiff's Complaint.

## CONCLUSIONS OF LAW

Having disposed of issues concerning dischargeability under Section 523 at trial, the only issue that remains is whether Debtor is entitled to a discharge under Section 727 of the Bankruptcy Code. Section 727 provides in pertinent part that:

The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727(a) (West 2000).

■ The Bankruptcy Code favors discharge of the honest debtor's debts and provisions denying this discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *See Cohen v. McElroy (In re McElroy)*, 229 B.R. 483, 487 (Bankr. M.D.Fla.1998). However, there are limitations on the right to a bankruptcy discharge.

■ Federal Rule of Bankruptcy Procedure 4005 provides that the initial burden of proof on an objection to discharge lies with the plaintiff. FED. R. BANKR. P. 4005. Plaintiff bears the initial burden of proving, by a preponderance of the evidence, that Debtor's discharge should be denied. *See Grogan v. Garner*, 498 U.S. 279, 285–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246, 249 (11th Cir. 1995); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984); *Manhattan Leasing Sys., Inc. v. Goblick (In re Goblick)*, 93 B.R. 771, 775 (Bankr.M.D.Fla. 1988). However, once Plaintiff meets the initial burden, Debtor has the ultimate burden of persuasion. *See id.* That is, Debtor must show by a preponderance of the evidence that he is entitled to a discharge. *See Clark v. Wilbur (In re Wilbur)*, 211 B.R. 98, 101 (Bankr.M.D.Fla. 1997).

**a. Section 727(a)(2)(A).**

■ Pursuant to 11 U.S.C. § 727(a)(2)(A), the objecting party must prove by a preponderance of the evidence that: (1) a transfer occurred; (2) the transfer was of debtor's property; (3) the transfer was within one year of the petition, and (4) the transfer was done with the intent to hinder, delay, or defraud a creditor or the trustee. *See Williamson Const., Inc. v. Ross (In re Ross)*, 217 B.R. 319, 323 (Bankr.M.D.Fla.1998) (citations omitted). In order to find fraudulent intent, the Court can consider circumstantial evidence or can infer it from the debtor's action. *See Ingersoll v. Kriseman (In re Ingersoll)*, 124 B.R. 116, 121 (M.D.Fla. 1991). "Badges of Fraud" are strong indicators of fraudulent intent. *See id.* These "Badges of Fraud" include: (1) lack of adequate consideration for the property transferred; (2) a family or close relationship between the parties; (3) retention of possession for use and benefit; (4) financial condition of the transferor before and after the transfer; (5) cumulative effect of the transactions and course of conduct after onset of financial difficulties or threat of suit; and (6) general chronology and timing of events. *See id.* at 121–22. "Extrinsic evidence of fraud, for purposes of defeating discharge, can be comprised of conduct intentionally designed to materially mislead or deceive creditors about a debtor's position; conveyances for less than fair value; or continued retention, benefit, or use of property allegedly conveyed together with evidence that conveyance was for inadequate consideration." *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 713 (Bankr.D.S.C.1995) (citing *Panuska v. Johnson (In re Johnson)*, 880 F.2d 78, 82 (8th Cir.1989)).

■ The preponderance of the evidence establishes that Debtor transferred property within one year of filing his petition with the intent to hinder, delay, or defraud his creditors. Debtor admits to jockeying funds between family-run business entities to avoid such funds being levied by his creditors. Debtor claims that he did not intend to hinder, delay or defraud his creditors when he transferred funds to CLSD,

but that he intended to pay his creditors. Additionally, Debtor claims he made some payment to Plaintiff during the wind up of BCC and that all the money transferred to CLSD was used to pay BCC creditors.

Debtor transferred funds to keep his business affairs afloat. Debtor paid some creditors with funds he was attempting to keep from other creditors in order to stay in business and had no recollection or records of who was paid and how much they received. Debtor boasted about the cash nature of the business, of making large cash payments to get work done, and of "under the table" business transactions. Debtor stated that he felt like he could stay in business and even felt as if he could revive BCC after he closed down doing business as BCC.

Debtor's assets were transferred to business entities owned by his relatives, one of the "badges of fraud". There is additional evidence establishing that Debtor sought to intentionally deceive his creditors. For these reasons, the Court finds that Plaintiff's objection based on Section 727(a)(2)(A) must be sustained.

**b. Section 727(a)(3).**

■■■■ The purpose of Section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *See PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 95 (Bankr.W.D.Pa.2000) (citing *Meridian Bank v. Alten*, 958 F.2d 1226 (3rd Cir.1992)). This statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. *See Meridian Bank*, 958 F.2d at 1230 (citations omitted). Creditors objecting to a discharge under Section 727(a)(3) have the initial burden of proving "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material busi-

ness transactions." *Id.* at 1232. Once a creditor shows that a debtor's records are inadequate, the burden shifts to the debtor to justify such inadequacies. *See id.* at 1233.

■■■■ Plaintiff established that Debtor failed to maintain and preserve adequate records. Plaintiff also established that such failure made it impossible to ascertain both Debtor's financial conditions and material business transactions. Accordingly, the burden shifts to Debtor.

Although not required to provide a full accounting, debtors must produce some records from which a financial condition could be ascertained or show that failure to keep records is justified. *See Clark*, 211 B.R. at 103. *See also PNC Bank*, 246 B.R. at 96–102 (thoroughly reviewing standards under § 727(a)(3),(5)). Debtors can justify failure to preserve adequate records if records were lost or stolen. *See PNC Bank*, 246 B.R. at 98 (citing *Aetna Ins. Co. v. Nazarian (In re Nazarian)*, 18 B.R. 143, 149 (Bankr.D.Md.1982)). In this case, Debtor claims that records and a computer containing records were stolen. However, as with any justification that is offered by a debtor, said debtor has the burden of proving such loss or theft. *See id.* In this case, there is only testimony supporting the alleged theft. The Court questions the credibility of such testimony without evidence to support Debtor's position that a theft occurred, such as a police report or insurance claim. Additionally, the fact that Debtor's father-in-law was able to produce records after the first day of trial lends credence to Plaintiff's position that Debtor did not give Plaintiff complete and accurate information concerning his business affairs. For these reasons, the Court finds that Plaintiff's objection based on Section 727(a)(3) must be sustained.

**c. Section 727(a)(4).**

■■■■ Section 727(a)(4) provides four distinct grounds to deny a debtor's dis-

charge. Each of these requires that the debtor "knowingly and fraudulently" act in a prescribed manner. Section 727(a)(4)(A) requires a court to find that the debtor knowingly made a false oath that was both fraudulent and material. *See Swicegood v. Ginn,* 924 F.2d 230 (11th Cir.1991). To be fraudulent, the oath must be made with "a knowing intent to defraud creditors." *Parnes v. Parnes (In re Parnes),* 200 B.R. 710, 714 (Bankr.N.D.Ga.1996) (citing *Swicegood,* 924 F.2d at 232). Fraudulent intent may be inferred from circumstantial evidence, including a series or pattern of errors or omissions. *See id.* For a false oath to be considered material, it must be shown that it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik,* 748 F.2d at 618 (citations omitted).

Plaintiff's initial burden under Section 727(a)(4)(A) requires establishing that: (1) Debtor made a statement under oath, (2) such statement was false, (3) Debtor knew the statement was false, (4) Debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *See Congress Talcott Corp. v. Sicari (In re Sicari),* 187 B.R. 861, 880 (Bankr.S.D.N.Y. 1994). Omissions from a debtor's sworn statement of affairs or schedules provide grounds for denying discharge. *See Chalik,* 748 F.2d at 618. A debtor's complete disclosure is essential to the proper administration of the bankruptcy estate. *See Windmiller v. Evans (In re Evans),* 106 B.R. 722, 723 (Bankr.M.D.Fla.1989). This disclosure serves the purpose of providing reliable information to those with an interest in the bankruptcy estate, who are entitled to a truthful statement of the debtor's affairs.

Debtor's duty in filing his bankruptcy petition was to list all assets and fully answer the questions set forth in the petition. Debtor performed this duty under penalty of perjury. Debtor did not list the numerous transfers to his family's business entities in his original schedules, rather almost one month after trial Debtor filed an Amended Statement of Financial Affairs.

While Debtor's omission of these transfers from his schedules constitutes a false oath, the Court finds no evidence that Debtor omitted these transfers with fraudulent intent. Nor does the Court believe that Debtor's counsel acted improperly in the underlying bankruptcy matter or in the discovery stage of this adversary proceeding as Plaintiff suggested. The acts giving rise to Debtor not receiving a discharge occurred prior to Debtor's filing for bankruptcy protection and fall squarely on Debtor's shoulders. Nevertheless, Plaintiff failed to establish that Debtor's discharge should be denied under Section 727(a)(4) and the objection based on Section 727(a)(4) overruled.

**d. Section 727(a)(5).**

Section 727(a)(5) works in tandem with Section 727(a)(3), to foster the same process of investigation and disclosure, by requiring that debtors give a satisfactory explanation of their insolvency, after commencing their bankruptcy case. *See PNC Bank,* 246 B.R. at 116. A prima facie case under Section 727(a)(5) has been held to exist where a creditor shows that a debtor has listed assets in his schedules at a lower figure than he has previously presented himself to be worth, or where there was an unusual and unexplained disappearance of assets shortly before the debtor filed bankruptcy. *See id.* (quoting *Ernst v. Walton (In re Walton),* 103 B.R. 151, 155 (Bankr.S.D.Ohio 1989)). As is the case with Section 727(a)(3), no requirement exists that debtors act fraudulently or intentionally to sustain an objection to discharge based on Section 727(a)(5). *See id.*

Additionally, as with Section 727(a)(3), the burden shifts to a debtor to explain losses or deficiencies once evidence of disappearance of substantial assets is

introduced. *See id.* "To be satisfactory, 'an explanation' must convince the judge. Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." *Chalik,* 748 F.2d at 619. *See also Hawley v. Cement Indus., Inc. (In re Hawley),* 51 F.3d 246, 249 (11th Cir.1995) (affirming finding that debtor's testimony and lack of documentation was unconvincing); *PNC Bank,* 246 B.R. at 117 (finding creditor not required to rely on mere statement that assets no longer exist).

As is the case with inquiry under Section 727(a)(3), there is no time limitation under Section 727(a)(5) as to events and transactions occurring within a specific number of months or years before the bankruptcy case. *See PNC Bank,* 246 B.R. at 117. When deciding whether a debtor's explanation is satisfactory for purposes of Section 727(a)(5), the issue is whether the explanation satisfactorily describes what happened to assets; not whether what happened to assets was proper. *See id.* If a debtor's explanation regarding the loss of a particular asset is, by itself, unconvincing and that debtor fails to timely and convincingly corroborate said testimony, then the debtor cannot prevail under Section 727(a)(5). *See id.* at 118. *See also MacPherson v. Shaheen (In re MacPherson),* 129 B.R. 259, 261 (M.D.Fla.1991) (requiring debtor to produce direct, specific evidence to defeat objection based on failure to explain loss of assets); *Furr v. Lordy (In re Lordy),* 214 B.R. 650, 669 (Bankr.S.D.Fla.1997) (noting explanation must satisfy the court).

If the Court could find Debtor's testimony to be convincing in this case, then an objection under Section 727(a)(5) could not be sustained. However, the Court does not find Debtor's testimony to be convincing with regard to disposal of large amounts of cash he admittedly received. Debtor claims that he paid BCC creditors with this money, but there is simply no evidence to corroborate Debtor's testimony. Accordingly, Plaintiff's objection under Section 727(a)(5) must be sustained.

### *CONCLUSION*

For the reasons discussed above, the Court finds that Debtor is not entitled to a bankruptcy discharge pursuant to Section 727 of the Bankruptcy Code. A separate judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.