In re Juan C. **GUADARRAMA** and Ilda Valencia aka Hilda Valencia, Debtors.

**Maureen A. Tighe, United States Trustee, Appellant,**

**v.**

**Ilda Valencia aka Hilda Valencia, Appellee.**

**No. CV 01–07407 MMM.**

United States District Court, C.D. California.

Sept. 30, 2002.

Michael J. Hauser, Santa Ana, CA, for appellant.

Christopher L. Blank, Newport Beach, CA, for appellee.

## ORDER REVERSING BANKRUPTCY COURT'S ORDER DENYING COMPLAINT TO REVOKE DISCHARGE OF DEBTOR ILDA VALENCIA

MORROW, District Judge.

On August 11, 1999, debtors Ilda Valencia and Juan C. Guadarrama commenced a Chapter 7 bankruptcy proceeding, which resulted in a discharge of their debts on November 22, 1999. On July 24, 2000, the United States Trustee sought to reopen the bankruptcy for the purpose of filing a complaint seeking revocation and denial of discharge pursuant to 11 U.S.C. § 727(d)(1). The motion to reopen was granted, and the Trustee filed her § 727(d)(1) complaint on November 8, 2000.[1] The Trustee alleged that Valencia had listed two false social security numbers on her bankruptcy petition, omitted

---

1. Appellant's Excerpts of Record ("ER"), Volume II, Tab 6.

her true social security number, and lied under oath to the Chapter 7 Trustee at the 11 U.S.C. § 341(a) meeting of creditors. Following a trial, the bankruptcy court found that the Trustee had failed to prove that Valencia's false oath was "material" and that she had obtained her discharge through fraud.[2] Accordingly, it declined to revoke the discharge. The Trustee has appealed the bankruptcy court's decision to this court.

To prevail on its complaint seeking revocation of discharge under 11 U.S.C. § 727(d)(1), the United States Trustee was required to prove (1) that Valencia obtained a discharge through fraud, and (2) that the Trustee was not aware of the alleged fraud prior to discharge. 11 U.S.C. § 727(d)(1). To prove that Valencia procured or attempted to procure a discharge by fraud, the Trustee was required to show that (1) Valencia knowingly and fraudulently made a false oath in or in connection with the bankruptcy proceeding and (2) that the oath concerned a material fact. See 11 U.S.C. § 727(a)(4)(A). Because the Trustee proved each of the necessary elements, the court reverses the order of the bankruptcy court denying relief on the Trustee's complaint seeking revocation of discharge, and remands to that court with directions to enter an order revoking Valencia's discharge.

## I. FACTUAL BACKGROUND

On August 11, 1999, Valencia and her husband, Guadarrama, filed a voluntary Chapter 7 bankruptcy petition. Valencia signed the petition under penalty of perjury. The petition listed two Social Security numbers for Valencia—546–78–6578 and 613–26–0952. Valencia had fabricated both numbers prior to the filing of the petition, and had used them to obtain employment and credit, and to attend college.[3] Valencia constructed the second of the two numbers by changing the last digit of her sister's valid Social Security number from a zero to a two.[4] Valencia had obtained a valid Social Security number— 609–08–4649—in October 1998. This number was not listed on the petition.[5]

Before filing the petition, Valencia worked as a receptionist in the office of bankruptcy petition preparer Rafael Berrios. While working for Berrios, Valencia learned how to prepare bankruptcy petitions. In September 1999, shortly after filing her own bankruptcy petition, Valencia began to prepare bankruptcy petitions for others.[6]

On September 13, 1999, Valencia and Guadarrama attended a 11 U.S.C. § 341(a) meeting of creditors conducted by the Chapter 7 Trustee of their bankruptcy estate, James J. Joseph. Joseph asked Valencia for her Social Security number, and Valencia gave him one of the fabricated numbers that she included on the bankruptcy petition—546–78–6578. Joseph also asked Valencia if she had read her bankruptcy papers, if the information contained in them was correct to her knowledge, and if the papers contained any mistakes of which she was aware. Valencia answered that she had read the filings, that they were correct as far as she knew, and that they did not contain any mistakes of which she was aware.[7] Following this

---

2. ER, Volume I, Tab 1, p. 221.

3. ER, Volume I, Tab 2, p. 236, Volume II, Tab 7, p. 352–353.

4. ER, Volume I, Tab 1, p. 50–56.

5. ER, Volume I, Tab 1, p. 50, Volume II, Tab 7, p. 352–353.

6. ER, Volume I, Tab 2, p. 236.

7. ER, Volume I, Tab 2, p. 236–237; Volume II, Tab 8.

meeting, on November 22, 1999, Valencia and Guadarrama received a discharge; their case was closed on December 10, 1999.[8]

On January 21, 2000, the United States Trustee filed a motion for sanctions against Valencia in her capacity as a bankruptcy petition preparer. On February 29, 2000, Valencia testified under oath at a hearing on the motion that neither of the Social Security numbers listed on her Chapter 7 petition had been issued to her by the Social Security Administration, and that she had failed to include her valid Social Security number on the petition.[9]

The United States Trustee then moved to reopen Valencia's Chapter 7 proceeding in order to prosecute a complaint for revocation of her discharge pursuant to 11 U.S.C. § 727(d)(1). The motion to reopen was granted on July 24, 2000 and the Trustee filed a complaint for revocation of Valencia's discharge on November 8, 2000.[10] The complaint was timely filed within one year of the date of the discharge. See 11 U.S.C. § 727(e)(1).

On June 22, 2001, the bankruptcy court conducted a trial on the Trustee's complaint. Valencia testified that she had fabricated the two Social Security numbers listed on her Chapter 7 petition and that she had used them to obtain credit.[11] She testified that she went to a credit reporting agency before filing her Chapter 7 petition to determine what debt she should list on her bankruptcy petition. She requested a report for her valid Social Security number, and learned that there was no

debt associated with that number. She then requested a report for one of the false Social Security numbers—546–78–6578—and learned that that was the number that reflected her debts.[12]

Valencia admitted that she did not disclose her valid Social Security number or the fact that she had listed two false Social Security numbers on her bankruptcy petition at the § 341(a) meeting of creditors.[13] She stated that, after the bankruptcy petition was filed, she used the valid Social Security number to open a bank account and obtain both a pre-paid credit card and a Nordstrom credit card.[14] Valencia acknowledged that she disclosed the bankruptcy proceeding when she applied for the first credit card, and was limited to a "pre-paid" card as a result. She did not disclose the bankruptcy on her application for the Nordstrom card.[15]

Assistant United States Trustee Arthur Marquis also testified at trial. He stated that the proper administration of bankruptcy cases depends on debtors' disclosure of their valid Social Security numbers. Specifically, he explained that the Social Security numbers listed on a petition are entered into a computer system to cross-check against previous bankruptcy filings and discharges, and to determine if the petitioner is eligible to receive a discharge.[16] Marquis asserted that, had he known of the false information contained in Valencia's petition prior to her discharge on November 22, 1999, the he would have initiated an action under § 727 to deny her

---

8. ER, Volume I, Tab 2, p. 237.

9. ER, Volume II, Tab 13.

10. ER, Volume I, Tab 2, p. 237; Volume II, Tab 6 & Tab 9.

11. ER, Volume I, Tab 1, p. 50–56.

12. ER, Volume I, Tab 1, p. 64–65.

13. ER, Volume I, Tab 1, p. 71–73.

14. ER, Volume I, Tab 1, p. 73–75.

15. ER, Volume I, Tab 1, p. 74–75.

16. ER, Volume I, Tab 1, p. 80–81, 99–100.

a discharge. His office has initiated similar actions in the past against individuals who have listed false Social Security numbers on their petitions.[17]

Based on the evidence presented at trial, the bankruptcy court found that Valencia had "knowingly ... omitted the Social Security number she was assigned by the Social Security Administration [from her petition] and ... [done] so with the intent to deceive the Trustee and her creditors."[18] It concluded, however, that the Trustee had failed to prove (1) that Valencia's failure to disclose her Social Security number was a "material" misrepresentation as that term is used in 11 U.S.C. § 727(a)(4), and (2) that Valencia obtained her discharge through fraud.[19] The court based its finding regarding materiality on its interpretation of *United States v. Phillips*, 606 F.2d 884 (9th Cir.1979), cert. denied, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980).[20]

The Trustee has appealed the bankruptcy court's decision, arguing that it erred in concluding that Valencia did not obtain her discharge through fraud and that her failure to disclose her valid Social Security number was not material.[21]

## II. DISCUSSION

### A. Legal Standard Governing Review Of A Bankruptcy Court Ruling

■ The district court has jurisdiction to hear appeals from final judgments, orders or decrees of the bankruptcy court. 28 U.S.C. § 158(a). When reviewing a decision of a bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992). The district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. It reviews the bankruptcy court's conclusions of law *de novo*. *In re Cohen*, 300 F.3d 1097, 1101 (9th Cir.2002); *In re Anastas*, 94 F.3d 1280, 1283 (9th Cir.1996).

■ Materiality is generally considered "a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts." *TSC Industries Inc., v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). See also *United States v. Gaudin*, 515 U.S. 506, 512, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The bankruptcy court's factual findings regarding Valencia's misstatements and non-disclosures must thus be reviewed for clear error, while its legal conclusion that the representations were not material is reviewed *de novo*. See *GAF Corp. v. Heyman*, 724 F.2d 727, 738 (2d Cir.1983) (review of a lower court's application of a legal standard to the facts is not limited by clearly erroneous rule); *K & M Joint Venture v. Smith International, Inc.*, 669 F.2d 1106, 1111–12 (6th Cir.1982) (review of mixed questions of fact and law is not governed by the clearly erroneous standard); *First National Bank of Cincinnati v. Pepper*, 547 F.2d 708, 710 (2d Cir.1976) (mixed questions of law and fact are subject to *de novo* review).[22]

---

17. ER, Volume I, Tab 1, p. 92–93.

18. ER, Volume I, Tab 1, p. 215.

19. ER, Volume I, Tab 1, p. 220–221, 232.

20. ER, Volume I, Tab 1, p. 217–219, 232.

21. Appellant's Opening Brief at 11.

22. In *United States v. Lindholm*, 24 F.3d 1078, 1083 (9th Cir.1994), a criminal bankruptcy fraud prosecution, the Ninth Circuit held that "[t]he materiality of a false statement in a bankruptcy case is a question of law." To the extent this holding applies in a civil context, it too warrants *de novo* review of the bankruptcy court's conclusion that Valen-

## B. Legal Standard Governing 11 U.S.C. § 727(d)(1)

The United States Trustee sought revocation of Valencia's discharge under 11 U.S.C. § 727(d)(1). Section 727(d) provides in relevant part:

"(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge ... if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge."

■ Revocation is an extraordinary remedy. *In re Bowman*, 173 B.R. 922, 924 (9th Cir. BAP 1994). It is a "well-accepted principle that the Bankruptcy Act was intended to permit the honest debtor to get a new start in life free from debt." *In re Adlman*, 541 F.2d 999, 1003 (2d Cir.1976). Consequently, "[s]ection 727's [revocation] of discharge is construed liberally in favor of the debtor and strictly against those objecting to discharge." *In re Adeeb*, 787 F.2d 1339, 1342 (9th Cir.1986). See also *Bowman, supra*, 173 B.R. at 924; *In re Devers*, 759 F.2d 751, 753 (9th Cir.1985) ("The statute is to be construed liberally in favor of debtors and strictly against the objector").

■ To succeed on its claim under § 727(d)(1), the Trustee was required to prove by a preponderance of the evidence: (1) that Valencia obtained a discharge through fraud, and (2) that the Trustee was unaware of the alleged fraud prior to discharge. 11 U.S.C. § 727(d)(1). See also *In re Topper*, 85 B.R. 167, 169 (Bankr. S.D.Fla.1988). To prove the first of these elements, the Trustee had to demonstrate that Valencia committed fraud in fact, that the fraud occurred in or in connection with her procurement of a discharge, and that "sufficient grounds ... existed which would have prevented the discharge." See *Bowman, supra*, 173 B.R. at 924 (" 'To revoke a discharge under § 727(d), the debtor must have committed a fraud in fact which would have barred the discharge had the fraud been known,' ") quoting *In re Edmonds, supra*, 924 F.2d 176, 180 (10th Cir.1991). The grounds for a denial of discharge are enumerated in 11 U.S.C. § 727(a), which states, in part, that the court may deny the debtor a discharge if she knowingly and fraudulently made a false oath in or in connection with the bankruptcy action. See 11 U.S.C. § 727(a)(4)(A).[23]

■ Thus, to secure revocation of Valencia's discharge, the Trustee was required to show that the fraud in which Valencia engaged would have caused the bankruptcy court to deny her a discharge under § 727(a)(4)(A) had it been known at the time. This is because "[t]he focus of § 727(d)(1) is fraud in the procurement of the discharge, not fraud with respect to the objecting creditor." *In re Barr*, 207 B.R. 160, 165 (Bankr.N.D.Ill.1997) (citing *In re Kaliana*, 202 B.R. 600, 604 (Bankr. N.D.Ill.1996)).

■ Section 727(d)(1) is strictly construed against the objector and liberally in

---

cia's failure to disclose her valid Social Security number was not material. The Ninth Circuit has held, by contrast, that a finding of materiality in a case seeking an exception to discharge under 11 U.S.C. § 523(a)(2)(B) is subject to review under the clearly erroneous standard. See *In re Lansford*, 822 F.2d 902, 904 (9th Cir.1987) (whether a statement in writing used to obtain money, goods or services was materially false under the circumstances is a question of fact).

**23.** No other grounds for the denial of discharge appear applicable under the facts of this case.

favor of the debtor. *In re Jones,* 178 B.R. 1, 3 (Bankr.D.N.M.1995); *Bowman, supra,* 173 B.R. at 924 (citing *In re Adeeb,* 787 F.2d 1339, 1342 (9th Cir.1986)).

### C. Whether "Obtaining A Discharge Through Fraud" Necessitates A Causal Connection Beyond That Required By 11 U.S.C. § 727(a)(4)(A)

Valencia argues, and the bankruptcy court found, that proof the debtor obtained a discharge through fraud under § 727(d)(1) requires more than evidence of fraud that would have caused the bankruptcy court to deny her a discharge under § 727(a)(4)(A). Valencia asserts that § 727(d)(1)'s requirement that the discharge be "obtained" through fraud mandates that there be a causal connection between the fraud and the debtor's discharge.[24] She contends that the dual requirements set forth in *Bowman*—that "[t]he fraud ... be proven in the procurement of the discharge" and that "sufficient grounds ... existed which would have prevented the discharge"—mean that the Trustee must show that the fraud led directly to her discharge. See *Bowman, supra,* 173 B.R. at 925 (citing *In re Topper,* 85 B.R. 167, 169 (Bankr.S.D.Fla. 1988)).

In *Bowman,* the issue was whether a debtor's fraudulent dealings with a creditor—dealing that were not directly related to the bankruptcy proceeding—were sufficient to support a revocation of his discharge under § 727(d)(1). The court distinguished fraud in a debtor's dealings with an objecting creditor from fraud in connection with the bankruptcy proceeding itself, and held that only the latter would support revocation under § 727(d)(1). See *id.* at 925 (concluding that the debtor's failure to provide a list of stolen tools to a bank that had a security interest in them and to advise it of the fact that he had filed an insurance claim would not have given the bank reason to object to his discharge, and thus did not constitute fraud in the procurement of a discharge). See also *Topper, supra,* 85 B.R. at 169 ("This case is governed by 11 U.S.C. § 727(d)(1), which provides that the Court may revoke a discharge if it 'was obtained through the fraud of the Debtor.' In general, it must be shown that (a) the discharge was procured by fraud; and (b) sufficient grounds existed which would have prevented the discharge, had they been known and presented in time"); *In re Jones,* 71 B.R. 682, 684 (S.D.Ill.1987) ("Thus, in order to state a claim under § 727(d)(1), the Bank must allege fraud of the Debtors in obtaining the discharge, not fraud of the Debtors vis-a-vis the Bank. *In other words,* it must be shown that there was fraud in the procurement of the discharge and also that grounds existed which would have prevented the discharge had they been known and presented in time." (emphasis added)).

■ As *Bowman* and these other cases make clear, the key inquiry for purposes of applying § 727(d)(1) is whether the debtor's fraudulent statement or concealment would have allowed the Trustee or a creditor to object to her discharge. If the Trustee proved all of the elements that would have supported a denial of discharge under § 727(a)(4)(A), therefore, this was sufficient to demonstrate that Valencia's discharge was "obtained through the fraud of the debtor" for purposes of § 727(d)(1). See, e.g., *In re Staub,* 208 B.R. 602, 606 (Bankr.S.D.Ga.1997) ("The U.S. Trustee has established a basis for denial of discharge under § 727(a)(4)(A) in that the Debtors acted fraudulently by failing to disclose required information thereby giv-

---

24. Appellee's Opening Brief at 11.

ing a false oath and such fraud, if timely known by the petitioning party would have led to a denial of the Debtor's discharge which is sufficient to establish that the discharge granted the Debtors was obtained through fraud, warranting revocation under § 727(d)(1)").

### D. Whether Valencia Obtained A Discharge Through Fraud

As noted, to prove that Valencia obtained her discharge through fraud, the Trustee was required to prove that she committed fraud in fact, that the fraud occurred in or in connection with her procurement of a discharge, and that "sufficient grounds ... existed which would have prevented the discharge." See *Bowman, supra,* 173 B.R. at 924.

To prove the first of these elements, the Trustee was required to show that Valencia's declarations under penalty of perjury were false, that she knew them to be false, and that she made them with fraudulent intent. See *In re Perry,* 252 B.R. 541, 549 (Bankr.M.D.Fla.2000) (discussing the showing that must be made under § 727(a)(4)(A)). She was also required to show that the false oath concerned a material fact. See *In re Wills,* 243 B.R. 58, 62 (9th Cir. BAP 1999) ("To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must show that (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact"); *In re Aubrey,* 111 B.R. 268, 274 (9th Cir. BAP 1990) (under § 727(a)(4)(A), the party objecting to discharge must prove that the debtor's oath was knowingly and fraudulently made, and that it concerned a material fact). See also *In re Brown,* 108 F.3d 1290, 1294 (10th Cir.1997) ("In order to deny a debtor's discharge

pursuant to [11 U.S.C. § 727(a)(4)(A)], a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact").

The bankruptcy court found that Valencia had committed fraud in fact and that she acted with fraudulent intent. It found, however, that the Trustee had failed to prove that Valencia's fraudulent representations and concealment were material, and thus that had failed to demonstrate that she procured her discharge through fraud. These findings will be examined in turn.

### 1. Whether Valencia Knowingly And Fraudulently Made A False Oath

The bankruptcy court explicitly found that Valencia (1) had made a statement under oath; (2) that the statement was false; (3) that Valencia knew the statement was false; and (4) that she made the statement with fraudulent intent. See *In re Coombs,* 193 B.R. 557, 563 (Bankr. S.D.Cal.1996). See also *Perry, supra,* 252 B.R. at 549. It found that Valencia had "knowingly and with the intent to deceive[ ] omitted the social security number assigned by the Social Security Administration and ... [done] so with the intent to deceive the trustee and her creditors...." [25] These findings were not clearly erroneous.

First, there is no dispute that, while under oath at the § 341(a) meeting of creditors, Valencia gave a false Social Security number and failed to disclose her valid Social Security number.[26] There is also no question that Valencia listed two false Social Security numbers on, and

---

25. ER, Volume I, Tab 1, p. 215.

26. ER, Volume I, Tab 2, p. 236–237; Volume II, Tab 8.

omitted her valid Social Security number from, her Chapter 7 petition, which she signed under penalty of perjury.[27] The bankruptcy court found that Valencia's "failure to disclose the social security number assigned to her by the Social Security Administration, in the petition and at the 341(a) meeting, was a false oath." This finding is supported by undisputed evidence in the record. Similarly, the undisputed evidence showed that Valencia knew the statements were false. Valencia admitted that she invented the Social Security numbers she listed on her bankruptcy petition and stated at the 341(a) meeting, and that she purposefully withheld her valid Social Security number.[28]

Finally, the evidence supported the bankruptcy court's finding that Valencia made the false statements with fraudulent intent. A finding of fraudulent intent "may be based on inferences drawn from a course of conduct" or "inferred from all of the surrounding circumstances." See *In re Olmstead*, 220 B.R. 986, 994 (Bankr. D.N.D.1998) (citations omitted). See *Perry, supra*, 252 B.R. at 549 ("Fraudulent intent may be inferred from circumstantial evidence, including a series or pattern of errors or omissions"). The bankruptcy court found:

"I believe that the debtor purposefully omitted reference to ... her real social security number, both in the petition and in the examination by the Trustee, so she could keep that clean. We already know from the examination of Ms. Valencia, ... she had that clean and, sure enough, right after the bankruptcy, or at least since the bankruptcy, she's gotten two credit cards and she has an account ... under her new social securi-

ty number.... I believe that's the reason she didn't make those revelations; she wanted to keep ... that social security number clean. She found it was clean, wonderful. Now I can just use that social security number, I don't have to be false about anything anymore, but I can get a fresh start by use of that social security number and no one will know by looking at that number, whether I was ever in bankruptcy." [29]

The bankruptcy court's conclusion that Valencia acted with fraudulent intent was adequately supported by inferences drawn from the facts presented at trial and was not clearly erroneous. Accordingly, the court's finding that Valencia committed fraud in fact, i.e., that she knowingly and fraudulently made a false oath as that term is used § 727(a)(4)(A), must be upheld.

**2. Whether Valencia's Misrepresentations And Concealment Were Material And Whether They Would Have Precluded Her Discharge Under 11 U.S.C. § 727(a)(4)(A)**

While the bankruptcy court found that Valencia had committed fraud in fact, it found that her fraudulent representations and concealment were not material. It stated:

"[T]he omission, itself, did not impede anything.... [I]t did not impede any investigation. Had there been an investigation, the proof is that nothing would have been disclosed that was not already either disclosed or discernable from the ... information that was already disclosed in the schedules.... [M]ight [the failure to disclose her valid social security number] have impeded an investiga-

---

27. *Id.*

28. ER, Volume I, Tab 1, p. 64–65; Volume II, Tab 13

29. ER, Volume I, Tab 1, p. 127–128.

tion into the debtor's financial history, and/or might it have misled creditors as to the identity of the petitioner? I think the answer is no." [30]

Citing *Phillips, supra,* 606 F.2d 884, the court concluded that "the U.S. Trustee ha[d] to prove that the revelation of this information might have made a difference in this case, some difference, somehow." [31]

■ To be material, the subject of the oath must "bear[ ] a relationship to the bankrupt's business transactions or estate, or concern[ ] the discovery of assets, business dealings, or the existence and disposition of his property." *In re Keeney,* 227 F.3d 679, 686 (6th Cir.2000) (internal quotations omitted) (quoting *In re Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992); *Wills, supra,* 243 B.R. at 62; *In re Weiner,* 208 B.R. 69, 72 (9th Cir. BAP 1997), rev'd. on other grounds, 161 F.3d 1216 (9th Cir. 1998)).

■ A false statement or omission is material if it concerns information that would aid in understanding the debtor's financial affairs. It does not have to be of a type that will harm or prejudice creditors. See *In re Hoblitzell,* 223 B.R. 211, 215–16 (Bankr.E.D.Cal.1998) ("A disclosure's materiality is not determined by whether it may financially prejudice the estate or creditors. An omitted asset may ultimately be found to have no value, but its disclosure is necessary 'if it aids in understanding the debtor's financial affairs and transactions' "); *Weiner, supra,* 208 B.R. at 72 (" 'The purpose of these requirements [under section 727(a)(4)(A),] is to insure that those interested in the case, in particular the trustee, have accurate information upon which they can rely without having to dig out the true facts or conduct examinations' "); *Coombs, supra,*

193 B.R. at 566 ("... there is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions"); *In re Ford,* 159 B.R. 590, 593 (Bankr.D.Or.1993) ("The value of omitted assets need not be significant to be material. If relevant to discovery of past transactions, materiality may be present. Detriment to creditors need not be shown").

The omission of a valid Social Security number from a bankruptcy petition, or the provision of a false number, has been held to be a material misrepresentation. See *Phillips, supra,* 606 F.2d at 887 (" 'Matters are material if pertinent to the extent and nature of bankrupt's assets, including the history of a bankrupt's financial transactions. Materiality is also established when it is shown that the inquiry bears a relationship to the bankrupt's business transactions or his estate, or concerns the 'discovery of assets, including the history of a bankrupt's financial transactions.' Statements designed to secure adjudication by a particular bankruptcy court are also material.... The false statements in the bankruptcy petition ... are ... material.... [T]he false social security number might have impeded an investigation into the appellant's financial history, and might have misled creditors as to the identity of the petitioner.... In addition, since bankruptcy is permitted only once in seven years, prior names and accurate social security information would be material to the determination of appellant's eligibility to petition for bankruptcy"). See also *United States v. Gellene,* 182 F.3d 578, 588 (7th Cir.1999) ("Just what is significant is difficult to say for the general case: failing to disclose ownership of a ream of paper in a

---

**30.** ER, Volume I, Tab 1, p. 206–207.

**31.** ER, Volume I, Tab 1, pp. 183–184, 217–219, 232.

multi-million dollar bankruptcy is probably not material, but in many cases a false social security number or a false prior address may be. Statements given by individuals in order to secure a particular adjudication carry their own reliable index of materiality; the person giving the statement believed it sufficiently important—and hence, material—to the goal of obtaining the desired action"); *In re Minetos*, 248 B.R. 729, 731 (Bankr.S.D.N.Y.2000) ("A debtor who files a petition with a false social security number violates his or her oath made in signing the petition and is not entitled to a discharge under 11 U.S.C. § 727(a)(4)(A)"). Cf. *Wills, supra*, 243 B.R. at 63 ("Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition").

■ The bankruptcy court concluded that Valencia's listing of false Social Security numbers and failure to disclose her actual Social Security number was not material because an investigation of her valid Social Security number would not have revealed information that would have resulted in denying her a discharge.[32] This reflects a misapplication of the legal standard governing materiality. A misrepresentation or omission is material if it "concern[s the debtor's] ability to acquire assets [or] ... tend[s] to assure the bankruptcy forum [the debtor] desire[s]." *Phillips, supra*, 606 F.2d at 887. It is also material if it affects the Trustee's ability to determine the debtor's eligibility

for discharge. *Id.* See also *Lindholm, supra*, 24 F.3d at 1083 ("In *United States v. Phillips*, 606 F.2d 884 (1979) ..., this court found that a false social security number, the fabrication of prior addresses, and the failure to give past names, are all material statements in that they might mislead creditors as to the identity of the petitioner and might ultimately affect the determination of debtor's eligibility to petition for bankruptcy"). Finally, it is material "if it aids in understanding the debtor's financial affairs and transactions." *Wills, supra*, 243 B.R. at 63. See generally *In re Riccardo*, 248 B.R. 717, 724 (Bankr.S.D.N.Y.2000) ("The use of a false social security identity in a Title 11 petition corrodes the integrity and fair administration of the bankruptcy process.... [A] discharge in bankruptcy will not be granted to those who use false social security numbers whether intentionally or mistakenly.... [T]he false information undermines the fundamental objectives of the Bankruptcy Code, which include complete and accurate disclosure of all relevant information and meaningful notice to all parties in interest. It is at least as important to represent accurately the debtor's social security number as any other information required to be set forth in the petition. At a minimum, a debtor who files a petition with a false social security number violates his or her oath made in signing the petition and is not entitled to a discharge under 11 U.S.C. § 727(a)(4)(A)"); *id.* at 721 ("... many creditors (particularly those handling high volumes of consumer credit transactions) may rely on social security numbers rather than or in addition to an individual's surname to uniquely identify the obligor. Such creditors, although listed on the

---

**32.** Indeed, the only evidence offered at trial on this score indicated that an investigation of Valencia's valid social security number would have revealed nothing, because she testified that the credit record for that number was completely clear at the time that she filed her Chapter 7 petition. ER, Volume I, Tab 1, p. 64–65.

debtor's schedules, will not receive adequate notice of a debtor's bankruptcy case even if they receive actual notice of the filing, for the misrepresented social security number may well result in the creditor's inability to associate the notice of case commencement with its obligor. The creditor is thus deprived of any meaningful ability to safeguard its rights in the bankruptcy process. Credit agencies must rely on the accuracy of social security numbers to identify individuals who have filed for bankruptcy protection, and other creditors, in turn, rely on the absence of any notation of a bankruptcy in a credit record in making credit decisions. And, of course, a misrepresented social security number could have a damaging effect upon an innocent person whose social security number 'identity' has been misappropriated").[33]

■ Here, Valencia's listing of false Social Security numbers and failure to disclose her valid Social Security number was material to the Trustee's ability to determine her eligibility for discharge. It may have assisted in permitting her to proceed in the Central District forum she chose. Certainly, disclosure of accurate and complete information would have aided in understanding her financial affairs and transactions. For these reasons, the misrepresentations and the concealment were material, and would have supported denial of a discharge under § 727(a)(4)(A). See *Riccardo, supra*, 248 B.R. at 724.

Valencia argues that her case is unique, because she did not incur any pre-petition debt using her valid Social Security number. For this reason, she asserts, listing the false Social Security numbers did not prevent any creditor from identifying her as one of its debtors and filing a valid claim, or result in the concealment of any outstanding obligations. This takes too narrow a view of materiality. First, as the *Riccardo* court noted, the numbers Valencia used may have been validly issued to other individuals, whose credit was impaired by her use of them to obtain a bankruptcy discharge. Second, as noted in *Phillips*, her failure to disclose valid Social Security information impeded the Trustee's ability to determine her eligibility for discharge.

■ Valencia appears to argue that because no disqualifying information would have come to light had she disclosed the valid number, her concealment of it and her use of the false numbers was not material. Materiality is judged not by the *actual* effect of the fraudulent misrepresentation or concealment, however, but by the effect it was *capable* of producing. See *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir.1995) (holding, in a case seeking an exception to discharge under 11 U.S.C. § 523(a)(2)(B)(i), that "... materiality ... refer[s] to a creditor's reliance upon a false statement in the sense that an untruth can be considered important (or 'material') if it influences a creditor's decision to extend

---

**33.** The *Riccardo* court decided a number of companion cases the same day it decided *Riccardo*, in which it similarly revoked discharges because the debtor had used a false Social Security number. See *In re Gonzalez*, 248 B.R. 731 (Bankr.S.D.N.Y.2000) (revocation of discharge and dismissal without prejudice because counsel failed to submit the a correct Social Security number); *In re Anderson*, 248 B.R. 726 (Bankr.S.D.N.Y.2000) (dismissal with prejudice for use of a false

Social Security number and refusal to reveal the correct Social Security number); *In re Isaza*, 248 B.R. 727 (Bankr.S.D.N.Y.2000) (dismissal with prejudice for use of a false Social Security number where the debtor had no Social Security number at all); *Minetos, supra*, 248 B.R. 729 (revoking debtor's discharge without prejudice because two digits of his Social Security number were transposed).

credit. However, a statement can still be material if it is so substantial that a reasonable person would have relied upon it, even if the creditor did not in fact rely upon it in the case at hand"). Cf. *Kungys v. United States*, 485 U.S. 759, 771, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (materiality turns on whether the misrepresentation "was predictably capable of affecting, i.e., had a natural tendency to affect, the official decision"); *United States v. Keefer*, 799 F.2d 1115, 1127 (6th Cir.1986) ("[T]he test for materiality is not whether the agency actually relied on the false statement, but whether the statement was capable of influencing, or had a natural tendency to influence, the agency's decision"). Here, there is no question that Valencia's use of false Social Security numbers and her concealment of a valid number were capable of interfering with the Trustee's ability to determine her eligibility for discharge, to understand her financial affairs, and to ascertain the completeness of her disclosures on the bankruptcy petition.

Moreover, the fraudulent representations and concealment would have been sufficient to preclude her discharge under § 727(a)(4)(A) had they been revealed prior to November 22, 1999. See *Riccardo, supra*, 248 B.R. at 724 ("At a minimum, a debtor who files a petition with a false social security number violates his or her oath made in signing the petition and is not entitled to a discharge under 11 U.S.C. § 727(a)(4)(A)"); *Minetos, supra*, 248 B.R. at 731 ("A debtor who files a petition with a false social security number ... is not entitled to a discharge under 11 U.S.C. § 727(a)(4)(A)"); *Anderson, supra*, 248 B.R. at 727 ("[T]he extraordinary privilege of a discharge in bankruptcy ... cannot be granted to a debtor based upon a false social security number").

Accordingly, while the court upholds the bankruptcy court's factual findings regarding the effect of Valencia's fraudulent misrepresentations and concealment on the bankruptcy proceeding, it concludes that the court applied an erroneous legal standard in determining whether the fraud concerned a material fact, and whether Valencia obtained her discharge through fraud. It thus reverses the bankruptcy court's finding that the Trustee failed to prove materiality and failed to show that Valencia obtained her discharge through fraud.[34]

### E. Whether The Trustee Was Unaware Of Valencia's Fraud Prior To November 22, 1999

To prevail on its complaint seeking revocation of discharge under § 727(d)(1), the Trustee was also required to show that she did not know of Valencia's fraud prior to her discharge on November 22, 1999. See *In re Stevens*, 107 B.R. 702, 705 (9th Cir. BAP 1989); *In re Dietz*, 94 B.R. 637, 639 (9th Cir. BAP 1988). See also *Bowman, supra*, 173 B.R. at 925; *Mid–Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 888 (8th Cir.1991) ("dismissal of a § 727(d)(1) revocation action is proper where, before discharge, the creditor knows facts such that he or she is put on notice of a possible fraud.... Thus, the burden is on the creditor to investigate diligently any possibly fraudulent conduct before discharge"). The bankruptcy court found that no person at the United States Trustee's office knew or had reason to know, at the time Valencia's discharge was entered, that she had listed false Social Security numbers on her petition, concealed a valid Social Secu-

---

**34.** To the extent the question of materiality is purely a question of fact, the court concludes that the bankruptcy court's finding on the matter was clearly erroneous, and reverses it on that ground.

rity number, or given false testimony at the § 341(a) meeting.[35]

In a footnote in her brief, Valencia argues that the bankruptcy court erred in determining that the Trustee had no reason to know that she had omitted her valid Social Security number on her bankruptcy petition. More specifically, Valencia contends:

> "Ms. Valencia's valid social security number came to the attention of the [U.S. Trustee]'s office on a petition that she filed for a debtor named Lomeli, in her capacity as a bankruptcy petition preparer. This information came to the [U.S. Trustee]'s attention prior to the deadline for filing complaints to object to her discharge.... [T]hese facts put the [U.S. Trustee] on inquiry notice concerning the alleged elements of the [U.S. Trustee]'s claims and, therefore, it is barred." [36]

While the Trustee challenges Valencia's right to raise this issue, she is entitled, as the prevailing party, to defend the judgment on any ground that she properly raised below. See, e.g., *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26, (1989) ("Without cross-petitioning for certiorari, a prevailing party may, of course, 'defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the District Court or the Court of Appeals,' ... provided that an affirmance on the alternative ground would neither expand nor contract the rights of either party established by the judgment below"). See also *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) ("Absent a cross-appeal, an appellee may 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court,' but may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary' "); *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 364, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994) ("A prevailing party need not cross-petition to defend a judgment on any ground properly raised below, so long as that party seeks to preserve, and not to change, the judgment").

The bankruptcy court's implied finding that the Trustee did not know of Valencia's fraud prior to her discharge on November 22, 1999 is reviewed for clear error. *Cohen, supra*, 300 F.3d at 1101; *Anastas, supra*, 94 F.3d at 1283.[37] Discovery of fraud for purposes of § 727(d) occurs when one "obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir.), cert. denied, 506 U.S. 986, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992). In determining whether, for purposes of 11 U.S.C. § 727(d)(1), a creditor obtained knowledge of fraud prior to the debtor's discharge, the court must examine whether creditor or Trustee exercised "diligence in discovering facts which could [have] result[ed] in the denial of a debtor's discharge...." *In re George*, 179 B.R. 17, 23 (Bankr.W.D.N.Y.1995). See also *Mid–Tech Consulting, supra*, 938 F.2d at 887–88 ("We agree with ... the majority of the courts that have addressed this issue, and

---

**35.** ER, Volume I, Tab 1, p. 226–228.

**36.** Appellee's Opening Brief at 1, n. 1, citing ER, Volume I, Tab 1, p. 98–101, 116–119.

**37.** See ER, Volume I, Tab I, p. 128 ("... where I find the defect in the proof is as to materiality"); *id.* at p. 126 ("Even if it had been caught by the Trustee ... and had been looked into").

hold that dismissal of a § 727(d)(1) revocation action is proper where, before discharge, the creditor knows facts such that he or she is put on notice of a possible fraud").

█ Here, the bankruptcy court implicitly found that the mere fact the United States Trustee's office had in hand prior to the date of discharge a third-party petition prepared by Valencia that bore her correct Social Security number did not place it on notice of the fact that she had used different Social Security numbers to secure her own discharge, and did not impose on it a duty to investigate her filing. Given the number of petitions filed in the Central District on an annual basis, and the fact that the petition that supposedly placed the Trustee on notice of Valencia's fraud concerned a third person's bankruptcy, this finding is not clearly erroneous. There is at best a remote possibility that staff at the United States Trustee's office would link a bankruptcy preparer with a bankruptcy petitioner of the same name, particularly given that Valencia's own petition listed different Social Security numbers than that she prepared for the third party. Accordingly, the bankruptcy court's implied finding that the Trustee did not know of Valencia's fraud until after she had received a discharge is not clearly erroneous, and provides no basis for upholding the order declining to revoke her discharge.

### III. CONCLUSION

For the foregoing reasons, the court reverses the bankruptcy court's order denying the Trustee relief on her § 727(d)(1) complaint, and remands to the bankruptcy court to enter an order revoking Ilda Valencia's discharge.